MARY MAHAN v. CHARLIE S. READ.

(Filed 29 September, 1954.)

**1. Appeal and Error § 1—**

Where the question of the constitutionality of the act upon which the proceeding is based is not raised in the lower court, such question may not be initially presented in the Supreme Court.

**2. Same: Appeal and Error § 40l—**

The Supreme Court will not decide the constitutionality of a statute when the appeal may be disposed of upon a question of less moment.

**3. Parent and Child § 18: Courts § 14½—**

Under the provisions of the Uniform Reciprocal Enforcement of Support Act (Chapter 317, Session Laws 1951; G.S. Ch. 52A) the initiating state has no jurisdiction to make any determination affecting the substantive rights of the parties, and therefore, a conclusion by our court that the duty of respondent to support the children in question had already been found to exist by a court of competent jurisdiction of the initiating state, is erroneous.

**4. Same—**

In a proceeding under the Uniform Reciprocal Enforcement of Support Act, the court of the initiating state, by approval of the petition and the certification of the documents, enables petitioner to submit herself to the jurisdiction of responding state without the necessity of personal presence or employment of counsel, and the responding state acquires jurisdiction of the respondent through service of summons and notice.

**5. Same—**

Where, after filing petition under the Uniform Reciprocal Enforcement of Support Act, the obligee moves to another state and is a resident of such third state at the time of the hearing in this state, our court has no jurisdiction to make an award for transmittal to the initiating state for transmittal in turn to the petitioner in the third state, and judgment of nonsuit and dismissal should have been entered here upon motion.

**6. Same—**

A proceeding by a wife under the Uniform Reciprocal Enforcement of Support Act to enforce payment of support for the minor children of the marriage should be dismissed upon motion in this State for defect of parties, since in such instance the children are the obligees and the suit must be brought in their name and behalf by a duly appointed next friend. This result is not affected by provision of the law of the initiating state that a petition under the act might be brought in behalf of a minor obligee without appointment of guardian or next friend, since the rights of the parties are determinable in the court having jurisdiction of respondent, and the cause here must be so constituted as to conform to our law.

**7. Parties § 9: Appeal and Error § 1—**

Where there is a fatal defect of parties plaintiff, of which the court will take notice *ex mero motu*, the action must be dismissed.

21—240

APPEAL by respondent from *Morris, J.,* January Term, 1954, of EDGECOMBE.

Proceeding under Uniform Reciprocal Enforcement of Support Act.

Petitioner, Mary Mahan, formerly the wife of respondent, Charlie S. Read, filed her petition 20 October, 1953, in the Pulaski County Chancery Court, Arkansas, the "Initiating State," alleging in substance that Sheilla Treadway Read, age 10, and Dwight LaMont Read, age 6, then residing with her in Little Rock, Pulaski County, Arkansas, are children of petitioner and respondent; that respondent, who resides and is gainfully employed in Rocky Mount, Edgecombe County, North Carolina, owes a duty of support to his said children which he has failed to discharge since 22 July, 1951; and, in accordance with the prayer of the petition, the Chancellor of the Arkansas court, based upon his finding "that the Petition set forth facts from which it may be determined that the respondent owes a duty of support" to his said children, ordered that certified copies of the petition, order, etc., as provided, be transmitted to the Superior Court of Edgecombe County, North Carolina, "responding State," in order that it "may obtain jurisdiction of the above-named respondent or his property."

Upon receipt of certified copy of the Arkansas proceeding, a summons and notice were issued by the Clerk in Edgecombe County and served on respondent, who, represented by counsel, filed an answer to the petition.

The hearing was before the Presiding Judge, January Term, 1954, of Edgecombe, without a jury. Petitioner and respondent were present in person and each testified. Their testimony was the only evidence before the court. At the conclusion of the hearing, the court entered judgment, which embodied certain findings of fact and conclusions of law.

The findings of fact, summarized, are:

1. Respondent has not provided support for his minor children since 22 July, 1951.

2. Until 22 July, 1951, petitioner (wife) and respondent (husband), and their two minor children, resided as a family in Edgecombe County, North Carolina, "at which time the petitioner left the place of abode in Edgecombe County of herself and the respondent and removed herself to the State of Arkansas," taking with her the two children.

3. In Arkansas, petitioner sued for and obtained an absolute divorce from respondent; and thereafter petitioner married Mahan.

4. Petitioner was a resident of Arkansas when she filed her petition, *i.e.,* 20 October, 1953, but since 4 January, 1954, she has been a resident of Williamsburg, Virginia, where she is employed as a nurses' aide, the children residing with her there.

Petitioner's evidence amplifies the findings of fact in several particulars, including the following: She left Rocky Mount for Arkansas 22

July, 1951. She testified: "I had told him months and months before then that I was going to leave him." She obtained her absolute divorce in Arkansas 15 November, 1951. She married an Arkansas boy, presumably Mahan, 28 January, 1952. She left Arkansas in December, 1953. She arrived in North Carolina 12 December, 1953. Presumably she visited in North Carolina—"all my people are from Rocky Mount"—until she went to Williamsburg, Virginia. On 4 January, 1954, she reported for duty as a nurses' aide at the hospital in Williamsburg.

Upon its findings of fact, the court below concluded:

"That the respondent is legally responsible for the support and maintenance of his two minor children in accordance with his ability, based upon his earning capacity and his estate. That said responsibility to support said children has already been found to exist by a court of competent jurisdiction of the County of Pulaski in the State of Arkansas."

Thereupon, the court below entered judgment requiring the respondent to pay into the office of the Edgecombe County Welfare Department for the support and maintenance of his two minor children $20.00 per week, "and thereafter to continue until the oldest of said children shall reach the age of twenty-one years when the same shall be reduced to the sum of $10.00 per week, or until the further orders of this Court," and providing further that "the Edgecombe County Welfare Department, upon receipt of said sum each week, shall immediately forward said sum so received by it from the respondent to the Clerk of the Chancery Court for the County of Pulaski of the State of Arkansas, who shall transmit the same to the petitioner, in accordance with the statutes in such case made and provided." Respondent appeals, assigning errors.

*Attorney-General McMullan and Worth H. Hester, Member of Staff, for plaintiff, appellee.*

*Davenport & Davenport and T. A. Burgess for respondent (defendant), appellant.*

BOBBITT, J. A statute known as the Uniform Reciprocal Enforcement of Support Act was approved in September, 1950, by the National Conference of Commissioners on Uniform State Laws. This statute, referred to hereafter as the 1950 Uniform Act, was enacted, with some variations from state to state, by the legislatures of many states, including Arkansas (Acts of Arkansas, 1951, Act. 68, pp. 140 *et seq.*) and North Carolina (1951 Session Laws of North Carolina, ch. 317, pp. 256 *et seq.*).

Variations in the North Carolina Act include the following:

(1) The 1950 Uniform Act divides the statute into three parts, bearing the captions, "Part I—General Provisions," "Part II—Criminal Enforcement," and "Part III—Civil Enforcement." No divisions or cap-

tions appear in the North Carolina Act. Sections 52A-27 through 52A-30 of our statute correspond to sections 1-4 of the 1950 Uniform Act, which appear under caption, "Part I—General Provisions." Sections 52A-31 and 52A-32 of our statute correspond to sections 5 and 6 of the 1950 Uniform Act, which appear under the caption, "Part II—Criminal Enforcement." Sections 52A-33 through 52A-44 of our statute correspond to sections 7-19 (excluding section 8) of the 1950 Uniform Act, which appear under the caption, "Part III—Civil Enforcement."

(2) Our statute specifically provides that when North Carolina is the "Initiating State," "actions hereunder shall be commenced by the issuance of summons in the form required for actions for alimony without divorce," and when North Carolina is the "Responding State," "the procedure under this Act shall be the same as in actions for alimony without divorce as provided by G.S. 50-16."

(3) Our statute omits entirely section 8 of the 1950 Uniform Act, which is worded as follows: "Remedies of a State or Political Subdivision Thereof Furnishing Support.—Whenever the state or a political subdivision thereof has furnished support to an obligee it shall have the same right to invoke the provisions hereof as the obligee to whom the support was furnished for the purpose of securing reimbursement of expenditures so made."

Difficulties were encountered and defects discovered when the provisions of the 1950 Uniform Act were related to actual case situations. So, the 1950 Uniform Act was extensively amended by action of the National Conference of Commissioners on Uniform State Laws in September, 1952; and the statute as amended will be referred to as the 1952 Uniform Act. Thereafter, the legislatures of many states enacted the 1952 Uniform Act. Arkansas repealed the 1950 Uniform Act, which it had enacted in 1951; and in lieu thereof enacted the 1952 Uniform Act. Acts of Arkansas, 1953, Act 170, pp. 573 *et seq.;* Arkansas Statutes, 1947, Annotated, Vol. 3, 1953 Cumulative Pocket Supplement, secs. 34-2401 *et seq.* Thus, many states, including North Carolina, have on their statute books the 1950 Uniform Act, with variations, while others, including Arkansas, have on their statute books the 1952 Uniform Act, with variations.

Uniform Laws, Annotated, Vol. 9A, 1953 Cumulative Annual Pocket Part, pp. 49 *et seq.,* contains tables showing the states which have a statute substantially in accord with the 1950 Uniform Act and other states which have a statute substantially in accord with the 1952 Uniform Act.

In 1948, the New York Joint Legislative Committee on Interstate Cooperation drafted what is called the Uniform Support of Dependents Act, which was enacted in New York and other states, including Ken-

tucky. A comparison of this statute with the 1950 and 1952 Uniform Acts discloses an identity of underlying purpose and sufficient similarity to permit reciprocity between states having any one of these statutes.

Respondent, upon appeal, questions the constitutionality of the North Carolina Act (Ch. 317, Session Laws of 1951). But the questions now raised were not presented to or passed upon by the court below. Moreover, disposition of this appeal does not necessitate a consideration of the constitutionality of the statute. *S. v. Lueders,* 214 N.C. 558, 200 S.E. 22. However, it is noteworthy that the Court of Appeals of Kentucky has upheld as constitutional its Uniform Support of Dependents Act, *Duncan v. Smith,* 262 S.W. 2d 373. And the Court of Appeals of Maryland, in *Commonwealth of Pennsylvania v. Warren,* 105 A. 2d 488, wherein Pennsylvania was the "Initiating State" and Maryland was the "Responding State," both of these states having the 1952 Uniform Act, held that the constitutional guarantee of a trial by jury extended only to the type of case in which the right of trial by jury existed at the time the Constitution was adopted.

W. J. Brockelbank, Professor of Law at the University of Idaho and a member of the Idaho Bar, served as chairman of the committee that drafted the 1950 Uniform Act. In an article appearing in the Arkansas Law Review, Vol. 5, No. 4, Fall 1951, from which the Supreme Court of Arkansas quotes in *Dean v. Dodge,* 250 S.W. 2d 731, Professor Brockelbank states succinctly both the purpose and the procedure embodied in the 1950 Uniform Act in the following paragraph:

"The idea of a two-state procedure originated with the New York Act. This idea was adopted by the Uniform Law Commissioners in the Uniform Reciprocal Enforcement of Support Act, and the difference between the two acts on this matter is chiefly one of form. Reduced to its simplest terms the two-state proceeding is as follows: It opens with an action which normally will be commenced in the state where the family has been deserted (the initiating state). A simplified petition is filed. The judge looks it over to decide whether the facts show the probable existence of a duty of support, and if they do he sends the petition and a copy of the act to a court of the responding state to which the husband has fled or in which he has property. That court will then take the steps necessary to obtain jurisdiction of the husband or his property, will hold a hearing and if the court finds that a duty of support exists, may order the defendant to furnish support and will transmit a copy of its order to the court in the initiating state. To enforce compliance with its orders the court may subject the defendant to such terms and conditions as it may deem proper, may require him to furnish bond or make periodic payments or, in case of refusal, may punish him for contempt. It has the duty to transmit to the initiating court any payments it receives and upon request

to furnish a certified statement of those payments. The initiating court must receive and disburse these payments."

The court below was in error in reaching the conclusion that the respondent's "responsibility to support said children has already been found to exist by a court of competent jurisdiction of the County of Pulaski in the State of Arkansas." Under the North Carolina and Arkansas statutes, the function of the court of the "Initiating State" is to certify to the sufficiency of the petition, *i.e.,* that it sets forth facts "from which *it may be determined* that the respondent owes a duty of support." (Italics added.) In this case, the Chancellor's certificate is in the quoted language. Indeed, the petition is that the court of the "Initiating State" certify copies of the petition and order, with copy of the Arkansas statute, to the court in the "Responding State" *so that the court of the "Responding State" may obtain jurisdiction of the respondent or his property.*

It is quite clear that the Arkansas court, when the Chancellor signed the certificate and ordered that the petition and other documents be transmitted to the Superior Court of Edgecombe County, had no jurisdiction to make any determination affecting the substantive rights of the parties nor did it purport to do so. In effect, by approval of the petition and the certification of the documents the Arkansas court enabled petitioner to submit herself, without the necessity of personal presence or employment of counsel, to the jurisdiction of the Superior Court of Edgecombe County, North Carolina. Upon the receipt and filing of the transmitted documents, the Superior Court of Edgecombe County obtained jurisdiction of respondent through service of a summons and notice. Respondent, through counsel, filed an answer to the petition.

While it is unnecessary to set forth in detail the provisions of the North Carolina Act, we note the following:

"The remedies herein provided are in addition to and not in substitution for any other remedies."

" 'Obligor' means any person owing a duty of support."

" 'Obligee' means any person to whom a duty of support is owed."

When the cause came on for hearing at January Term, 1954, of Edgecombe County, before the Presiding Judge of the Second Judicial District, the undisputed facts were that petitioner had definitely and finally left Arkansas as her residence and place of abode and she and the children were then residing in Williamsburg, Virginia; and the question presented was not the broad question as to whether respondent owed a duty to support his children but the specific question as to whether the court in the pending two-state proceeding under the Uniform Reciprocal Enforcement of Support Acts had authority to require the respondent to make payments to the Welfare Department of Edgecombe County for

transmittal to the Pulaski County Chancery Court of Arkansas for transmittal, in turn, to the petitioner in Williamsburg, Virginia.

It is an ironical development that the first case to reach this Court under our Uniform Reciprocal Enforcement of Support Act should be predicated upon a factual situation wholly different from the typical case posing the acute problem that gave rise to the legislation. Such acute problem was the situation where a deserting husband and father abandons his family and flees to another jurisdiction and thereby escapes his obligations because the wife and children have neither the facilities nor the means to pursue him and institute suit in the state in which he chooses to establish a new residence. In fact, some of the popular names given the act are the Skipper's Act, the Runaway Father's Law, the Disappearing Pappy's Bill, and the Fugitive Husband's Law. Alabama Law Review, Vol. V, No. 2, Spring 1953, Article, "Alabama's Reciprocal Nonsupport Legislation," by Mary A. Lee. See also, 29 N.C.L.R. 423 et seq. The case before us presents the problem of the *roving obligee* rather than that of the *fugitive obligor.*

True, the language of the act requires only the *presence* of the obligee in the Initiating State when the petition is filed. So long as the obligee is present in such state, it has a definite interest in the proceeding. Awards made in the Responding State are transmitted to the Initiating State in discharge of a duty of support to an obligee present therein to the end that its Welfare Department will not be saddled with the burden of supporting destitute persons. For this reason, the Initiating State has supervision of the funds so that it may see that the persons to be supported thereby actually get the benefit thereof.

*Cessante ratione legis cessat, et ipsa lex.* We do not think the act should be interpreted so as to apply to a situation other than one where the obligee is present in the Initiating State and the obligor is subject to the jurisdiction of the Responding State. To interpret the act so as to permit an obligee to pursue a remedy through the courts of two states when the obligee is not present in either one of them and perhaps is on the move from place to place would so complicate and confuse the procedure thereunder as to impair seriously its manifest purpose and its usefulness in proper cases.

It is to be noted that when the cause was heard the question for determination was not whether an award should be made for support of the children while they were in Arkansas.

We hold that the Superior Court of Edgecombe County was without authority in the Arkansas-North Carolina proceeding to make an award for transmittal to the Arkansas court for transmittal, in turn, to the petitioner in Virginia, for the future support of the children while in Virginia. For this reason, the motions for judgment of nonsuit and

dismissal of the Arkansas-North Carolina proceeding should have been allowed.

Had we reached a different conclusion, even so this cause would have to be dismissed. The obligees are the children. Respondent owes no duty of support to petitioner. Nor does she assert that he owes such duty.

Thus, the obligees, who should be the petitioners, are the real parties in interest; and under our statute it is provided that in actions when any of the parties plaintiff are infants suit must be brought in the name of such infants and in their behalf by general or testamentary guardian or by duly appointed next friend. G.S. 1-64. Where there is a fatal defect of parties plaintiff, of which the Court will take notice *ex mero motu,* the action must be dismissed. *Dare County v. Mater,* 235 N.C. 179, 69 S.E. 2d 244.

It is specifically held in North Carolina that when an infant has no other adequate remedy, suit against the father for support may be brought in its name and behalf by a duly appointed next friend. *Green v. Green,* 210 N.C. 147, 185 S.E. 651; *Pickelsimer v. Critcher,* 210 N.C. 779, 188 S.E. 313; *Bryant v. Bryant,* 212 N.C. 6, 192 S.E. 864.

We are not unmindful of the following provision of the Arkansas Act: "A petition in behalf of a minor obligee may be brought by a person having legal custody of the minor without appointment as guardian *ad litem.*" No determination of legal custody is alleged or shown. Irrespective of this, the complete answer is that this provision is not in the North Carolina Act. And since the rights of the parties are determinable in the court having jurisdiction of respondent, the cause here must be so constituted as to conform to North Carolina law.

Bearing upon the question of custody, we note the fact that, the petitioner and the children being now in Virginia, neither Arkansas nor North Carolina has jurisdiction to determine the question of custody. *Coble v. Coble,* 229 N.C. 81, 47 S.E. 2d 798.

The minor children are not without remedy. A properly constituted action may be brought in the courts of North Carolina in their name and for their benefit. In connection therewith, custody as between parents could be determined. If petitioner is unable or unwilling to cause such proceeding to be commenced in North Carolina, it would seem that the interests of the children, as long as they remain in Virginia, could be protected by a Virginia-North Carolina proceeding under the Uniform Reciprocal Enforcement of Support Acts of these states.

Since the record does not disclose whether Mahan was left in Arkansas or whether he now resides with petitioner and the children in a family relationship in Williamsburg, no question arises now as to the liability of a stepfather for support of his wife's children while living in the relationship of a family unit.

For the reasons stated, the judgment of the court below is
Reversed.