MARY CATHERINE DALY, PLAINTIFF-RESPONDENT, v. GEORGE J. DALY, Jr., DEFENDANT-APPELLANT.

Argued April 23, 1956—Decided May 28, 1956.

*Mr. James S. Ely* argued the cause for the appellant.

*Mr. Milton T. Lasher* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from an order and judgment of the Juvenile and Domestic Relations Court of Bergen County requiring the defendant-appellant to pay $32 per week for the support and maintenance of four minor children, said payments to be made to the Probation Office of Bergen County and then to be sent to the Juvenile Court in the County of Jefferson, Kentucky.  The order. is conditioned on the plaintiff-respondent permitting the defendant-appellant reasonable visitation rights with the four children at their place of residence in Kentucky, permitting the defendant-appellant to have the children with him at least one month during the summer of each year to be selected

by him, and requiring the appellant to pay the traveling expenses of the children from Kentucky to the appellant's home in this State and their return.

We certified the cause here on our own motion. *R. R.* 1:10–1(*a*).

In 1955 the wife filed a verified complaint under the Uniform Reciprocal Support Act in Kentucky after taking a pauper's oath. The Kentucky statute, *P. L.* 1954, *c.* 190, *KRS* 407.010–407.360, being the Uniform Act, contains relevant and reasonably similar provisions to our Uniform Reciprocal Enforcement of Support Act, *N. J. S.* 2A:4–30.1 *et seq., L.* 1952, *c.* 197, as amended by *L.* 1953, *c.* 245.

The complaint was filed in the Juvenile Court of Jefferson County, Kentucky, as the initiating state, and was certified and transmitted to the Juvenile and Domestic Relations Court of Bergen County, the court with jurisdiction in New Jersey as the responding state, pursuant to the provisions of *N. J. S.* 2A:4–30.11, 12. The defendant was and is a resident of Bergen County in this State. The County Adjuster of Bergen County appeared below and here. *N. J. S.* 2A:4–30.12.

This statute contains a new approach in interstate cooperation to enforce the support of dependents. It expressly provides that "the remedies herein provided are in addition to and not in substitution of any other remedies," *N. J. S.* 2A:4–30.3. We are in accord with the expression of the Appellate Division "every endeavor should be made by the courts to render this statute operable, for the objectives of the legislation are very worthy." *Pfueller v. Pfueller,* 37 *N. J. Super.* 106 (*App. Div.* 1955). However, we made our position clear in *State v. Greenberg,* 16 *N. J.* 568, 573 (1954), that we were not willing to lend ourselves to the views expressed by others, including the National Conference of Commissioners, but would confine our interpretation of the statute only to such questions as they are properly presented in each case.

The enforcement of an act of such broad sweep and unique procedural purposes will present some constitutional, juris-

dictional and procedural questions with respect to specific provisions of the act and their application to individual family situations consistent with the public policy of this state in accordance with the general principles of comity. *Cf. Fantony v. Fantony,* 21 *N. J.* 525 (1956). So far there is very little decisional law, but many theoretical questions and objections have already been explored. *Commonwealth ex rel. Shaffer v. Shaffer,* 175 *Pa. Super.* 100, 103 *A. 2d* 430, 42 *A. L. R. 2d* 768; 37 *A. B. A. Journal, pp.* 93, 97; 17 *Missouri L. Review* 1; 31 *Oregon L. Rev.* 97, 98 (1952); *U. L. A. 9A,* and notes of the Uniform Commissioners therein. There is a careful review of these problems in 17 *Pittsburgh L. Rev.* 261 (1956).

The presumption is that a statute is constitutional, and it is a settled rule that a statute will not be declared inoperative and unenforceable unless it is plainly in contravention of a constitutional mandate or prohibition. It is the duty of the courts to so construe a statute as to render it constitutional if it is reasonably susceptible of such interpretation, and to see that its enforcement is confined within constitutional limitations. *St. John the Baptist Greek Catholic Church of Perth Amboy v. Gengor,* 121 *N. J. Eq.* 349 (*E. & A.* 1937); *Lynch v. Borough of Edgewater,* 8 *N. J.* 279 (1951); *Woodhouse v. Woodhouse,* 17 *N. J.* 409, 416 (1955).

It is universally recognized that the family is the basic unit of the complex society in which we live and that its stability is indispensable to the public welfare and health, morals and upbringing of children is its core and essence. A child has the right to be equipped for its future mature life, and this equipment is nothing more than education in its generic and inclusive sense, implying physical, intellectual and moral development. This has been recognized in all civilizations, with few exceptions since Crito said to Socrates, "No man should bring children into this world who is unwilling to persevere to the end in their nurture and education." *Plato, Crito (Jowett transl.* 1871). *Cf. Jonitz v. Jonitz,* 25 *N. J. Super.* 544 (*App. Div.* 1953).

But due to the present mobility of our people the problem of enforcing a father's duty to so support his children is not without technical jurisdictional and procedural difficulty where jurisdiction rests solely on the fiction of the marital domicile. We have made it clear that our public policy aims to prevent this State from becoming a haven for fathers against whom orders of support have been entered in foreign jurisdictions, *Conwell v. Conwell,* 3 *N. J.* 266, 273 (1949), and we have made it equally clear that state lines do not and should not make court barriers in the absence of overriding constitutional limitations. *Woodhouse v. Woodhouse, supra,* 17 *N. J.,* at *page* 417 (1955). The Uniform Reciprocal Enforcement of Support Act, *N. J. S.* 2A:4–30.1 *et seq.,* as amended by *L.* 1953, *c.* 245, gives concrete expression and application to these principles, and establishes additional remedies for a wife or children in need of support in actions easy to initiate when the father of the family unlawfully refuses to furnish the support and there are intervening state lines between their established residence and his. The principles of comity would seem to require that where a state can civilly aid the father's duty to support his children by obtaining *in personam* jurisdiction of a father where necessary, it should do so. *Cf. Woodhouse v. Woodhouse, supra, page* 417; *O'Loughlin v. O'Loughlin,* 6 *N. J.* 170, 179 (1951).

We have thus stated in broad and general terms the principles generally applicable to questions of support of children, but these statements should not be construed that this court will countenance a constitutional trespass on the rights, civil or criminal, of the father when properly asserted. As in all marital questions arising under the inherent statutory jurisdiction of our courts in divorce, nullity and the custody and support of children, each case must be decided on its particular facts. In this case we are not called upon to apply the provisions of the statute, *N. J. S.* 2A:4–30.1 *et seq.* to an order of support for the respondent wife, since no such application was made in the initiating state.

Here the appellant and respondent were married on July 27, 1945, and lived in their jointly owned home in Rutherford, New Jersey, until June 13, 1951. Four children were born of the marriage, who at the present moment are all under the age of ten years. Trouble arose in this home over the husband's alleged drinking, and in June 1951 the wife left the State and took the children with her to her parents' home in Kentucky. In July 1951 the wife filed a complaint in the Bergen County Juvenile and Domestic Relations Court charging her husband with cruelty and asking for support for herself and the four children. She appeared for the hearing of the case but all efforts to settle that proceeding were unsuccessful and led to further recrimination and she returned to Kentucky.

The appellant contends he went to Kentucky in the same year and attempted to have his wife return to the home in Rutherford, which he had continued to hold and did hold until June or July 1952, when the house was sold for $3,200 and half of these net proceeds were paid to the wife. The visit to Kentucky also had the purpose of appellant receiving certain treatments at a Veterans' Hospital there, the nature of which is not clear from that part of the record which we have considered in this case, but the effort at reconciliation in Kentucky resulted in still further recriminations. But one fact stands out clearly—that other than the property payment the appellant has not contributed to the support of these small minor children since June 1951.

Judge Kole below carefully examined the application of the Uniform Reciprocal Enforcement of Support Act to this factual situation and the duties that this appellant, as a father, owed to the children under the law of this State and he found that all that is required for jurisdiction in the Juvenile and Domestic Relations Court of this State as the responding state in a proceeding under the provisions of this reciprocal statute is the "presence" of the husband or father (obligor) in this State; the presence or residence of the children or the wife (obligee) in another state, and the existence of a duty of support on the part of the father

under the laws of this State. Citing *N. J. S.* 2A :4–30.4; 2A :4–30.7. *Smith v. Smith,* 131 *Cal. App.* 2d 764, 281 *P.* 2d 274, 278 (*Ct. App.* 1955); *Mahan v. Read,* 240 *N. C.* 641, 83 *S. E.* 2d 706, 712 (*Sup. Ct.* 1954). See also *Smith v. Smith,* 125 *Cal. App.* 2d 154, 270 *P.* 2d 613 (*Ct. App.* 1954). He further held the use of the word "presence" in the statute avoids the necessity of the ofttimes difficult question of determining whether the wife or children acquired a domicile in the initiating state separate and apart from the husband.

In the course of the proceedings the court below on its own initiative propounded certain depositions and interrogatories and answers were made by the respondent in Kentucky without the appellant having an opportunity of cross-examination. This could present a constitutional question of some difficulty, but our examination of the record satisfies us that there is proof sufficient to reach a decision without considering these depositions or interrogatories. This conclusion of ours disposes of the first two points raised by the appellant: (1) that the trial court erred in admitting into evidence depositions that were taken *ex parte* without any compliance with the rules of court or the statute; and (2) the trial court erred in basing a decision upon depositions which were never marked nor received in evidence.

The next two points by the appellant go to the basic issues in this particular case. Point Three is that the trial court erred in ordering the defendant-husband to support his family in Kentucky when the family domicile had always been in New Jersey and the defendant's children were removed therefrom by the wife and she refused to return. Point Four is where the residence and domicile of the family is New Jersey there is no duty to support a family in Kentucky kept there over the objections of the parent of whom support is demanded.

As the responding court the Juvenile and Domestic Relations Court of Bergen County assumed jurisdiction under the following provisions of the reciprocal statute: *L.* 1952, *c.* 197, as amended by *L.* 1953, *c.* 245, now *N. J. S.* 2A :4–30.4 and 2A :4–30.7 :

"2A :4–30.4    Extent of duties of support

Duties of support arising under the laws of this state, when applicable under section seven, bind the obligor, present in this State, regardless of the presence or residence of the obligee."

"2A :4–30.7    Choice of Law

Duties of support applicable under this law are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding State during the period for which support is sought until otherwise shown."

The 1953 amendment to the statute struck out from section 7 of the act the words "or where the obligee was present when the failure to support commenced, at the election of the obligee," and it added the last sentence, "The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown."

Some constitutional questions had been raised as to the right of the obligee to make such an election. See 36 *A. B. A. Journal* 1003, 1005 (1950) ; 9*A U. L. A.*, § 7, and the notes appended; 17 *Pittsburgh L. Rev.* 261, 276. As indicated, the purpose of such amendment was that the obligee should never have an absolute right to choose the applicable law as her interest might dictate. This is obviously so because of the different approaches of the respective individual states to the question of support which are grounded in public policy, and the questions of conflict in such public policy could necessarily arise and defeat the purpose of the law.

The provision is very clear that the duties of support under the act are those imposed or imposable under the laws of the state where the obligor was present during the period for which support is sought, and the presumption places on him the burden of going forward with proof that he was not present in the responding state during such period. The appellant here was present at all times in the State of New Jersey; therefore it is the law of this State which is applied on the question of support for the children. The application of the law of this State to the duty of this appellant to support his children who are presently resident in another

state under these provisions of the statute does not run counter to the rule that "no state will directly enforce a duty to support created by the law of another state." *Restatement, Conflict of Laws* 458 (1934).

In this State we have advanced a long way from the limitations of the common-law rule with respect to the support of children by the father. This duty was considerably enlarged by our former Court of Chancery and our statutory law of which the following is not an all-inclusive list: *R. S.* 44:1–140; *N. J. S. A.* 44:4–104 *et seq.; N. J. S. A.* 30:4–60 *et seq.; N. J. S.* 2A:34–23, 24; *R. S.* 9:2–1 *et seq.; N. J. S. A.* 44:4–108; *N. J. S. A.* 44:1–147; The Uniform Desertion and Support Act, *N. J. S.* 2A:100–1 *et seq.* This development has been carefully traced and explained in *Bonanno v. Bonanno,* 4 *N. J.* 268 (1950); *Greenspan v. Slate,* 12 *N. J.* 426 (1953); *State v. Savastini,* 14 *N. J.* 507 (1954); *State v. Greenberg,* 16 *N. J.* 568 (1954); *Mowery v. Mowery,* 38 *N. J. Super.* 92 (*App. Div.* 1955).

The decided cases and our statutory provisions make it clear that the father's duty to support his minor children is a duty flowing directly from him to them without regard to any marital dereliction of his wife. The cases are legion where a divorce is granted in favor of the husband but an order for the support of the children by the husband is entered.

Since the amendment of the Juvenile and Domestic Relations Court Act by *L.* 1946, *c.* 77; *N. J. S. A.* 9:18–14, that court has concurrent jurisdiction to base an award for support on obligations recognized in the Superior Court, Chancery Division, based on the duty of the husband to supply suitable support and maintenance for his children. *Bonanno v. Bonnano, supra.* This duty is a continuing one and subject to very few exceptions.

There can be no question that, without regard to the reason for the respondent leaving the marital domicile, if the children are in this State an order of support can be entered based upon the circumstances of the parties in amounts commensurate with the husband's financial ability or earning

capacity, *State v. Savastini, supra,* and the inherent powers of the courts to enforce their orders would be called into play and implemented by the criminal sections of the statutes within constitutional limitations.

A reading of *N. J. S.* 2A:4-30.4, 30.7 makes it clear that the statute is not limited to cases where the obligor-husband leaves the jurisdiction of the initiating state, and these sections are predicated upon the failure to provide needed support for dependent children and the flight of the obligor is in no way made the controlling factor.

The testimony of the appellant below clearly indicates that his marital difficulty was related to the question of excessive drinking on his part. He admits he was under treatment for his weakness and that his doctor advised him to stop drinking; assumed a very technical attitude as to the extent of it and rather flippantly stated, "I like my beer. There are no two ways about it." He admitted he has not contributed one cent since 1951 to the support of these children, and his excuse for not working is that he is taking care of his father and mother and while there are others in the family they cannot take care of them. He has not been employed since he lost a position with the Prudential Insurance Company on February 18, 1951. His own testimony indicates a persistent and willful refusal to support his children under the mistaken belief that his marital difficulties with his wife, the mother of these children, are such that relieve him of this duty. That is simply not so under the law of this State. He likewise seems to be quite content to maintain the *status quo* insofar as custody is concerned, so long as he does not have to contribute anything to the children's support. We are satisfied on the appellant's own testimony that he has failed in his duty to supply adequate support to his four minor children now resident in Kentucky and that the order entered below does not offend the Constitution or the public policy of this State.

Under the enlarged jurisdiction of the Juvenile and Domestic Relations Court it is no longer a *sine qua non* of that jurisdiction that the aim of the support granted is to

prevent either the wife or children from becoming public charges. *Lasasso v. Lasasso,* 1 *N. J.* 324, 328 (1949); *Bonanno v. Bonanno, supra,* 4 *N. J.,* at *page* 273.

The order below modified the request of $40 a week for the four children as entered by the initiating Juvenile Court in Jefferson County, Kentucky, and required the appellant to pay only $8 a week for the support of each of these children. While this seems unreal under economic conditions as they exist today, the effect of the order is to call upon the wife, who is admittedly a registered nurse, to supplement this from her own income earned from her profession. The order is in effect a temporary contingent order and will be subject to revision in any direct proceeding seeking to establish or modify the marital status of the appellant and respondent—a question which does not necessarily have to be disposed of in any proceeding under the Uniform Reciprocal Enforcement of Support Act for the support of children.

The order of the Juvenile and Domestic Relations Court of Bergen County is affirmed.

*For affirmance*—Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—4.

*For dismissal*—Justice HEHER—1.