Linda V. COBBE, a minor, by her mother and next friend, Harriet M. Cobbe, Appellant,

v.

Jerome F. COBBE, Appellee.

No. 2579.

Municipal Court of Appeals for the District of Columbia.

Argued June 13, 1960.

Decided Aug. 5, 1960.

Melvin M. Feldman, Washington, D. C., for appellant.

No appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant, plaintiff below, is a sixteen-year-old girl who instituted proceedings through her mother as next friend for support money from appellee, her father, under this jurisdiction's Uniform Reciprocal Enforcement of Support Act.[1]

It appears from the testimony of the mother that she and the appellee were married in 1932. Three children were born of this union, appellant being the youngest, before appellee secured a divorce in Florida in 1946. At the time of the divorce the mother was given custody of the three children and awarded $100 per month for their support. Soon thereafter she became a resident of the District of Columbia and resided here with her children until 1956.

In 1956 due to an illness which required hospitalization the mother requested that appellee take custody of the two younger children as she felt unable to care for them during her illness. Appellee agreed, and in proceedings before a Florida court at which the mother appeared personally, custody of the two children was given to him. The court abated the support payments insofar as the care of these two children was concerned, but ordered appellee to continue to contribute $35 per month to the support of the oldest child who was partially self-supporting and still living with the mother.

In June 1958, with the consent of her father, appellant came to the District of Columbia to spend the summer with her mother who had recovered and was working. At the end of the summer and ever since the child has refused to return to her father's home in Florida, preferring to live with her mother and older sister. In order to be able to stay with her mother she sought support money in the court below. According to the mother, appellee has never affirmatively sought the return of his daughter, with the exception of one instance when, in reply to a request for voluntary support contributions, he forwarded $50 with instructions that it be used for appellant's return to Florida.[2]

The mother further testified as to appellee's present address in Florida, his employment and salary there, her expenses regarding appellant, and other information to her best knowledge and belief. Appellant testified to the effect that after coming to the District of Columbia in the summer of 1958 she refused to return to Florida because she preferred staying with her mother and older sister. She stated her father never requested her return except for the time

---

1. Code 1951, § 11–1601 (Supp. VIII) et seq.

2. The disposition of this case does not depend on nor affect the status of the second child, a boy, whose custody was awarded to appellee in the 1956 Florida decree. Nevertheless, it is interesting to note his whereabouts as evidence tending to show appellee's attitude toward the well-being of his children. This child went to spend the summer of 1957 on a farm in Danville, Virginia, with a party whose relationship to the principals here is not apparent from the record. When the summer was over the boy returned to Florida but expressed a desire to live on the farm and was allowed by his father to return there. Since that time the mother estimates appellee has contributed only $45 toward the boy's support. The suit below, however, did not involve a request for support money for this child.

he forwarded the money which he stated was for that purpose.

After hearing the ex parte testimony of appellant and her mother the court dismissed the complaint initiating reciprocal support proceedings because the decree awarding custody of the two minor children to appellee had relieved him from the obligation of making payments to the mother for their support, as he was required to support them in his own home. The court stated it was conclusively bound by the decree and without jurisdiction to grant the relief prayed for in the complaint.

The court's determination that the 1956 Florida custody decree barred this proceeding was, we think, erroneous. It is true that personal jurisdiction over the mother in that action made the decree res judicata,[3] but in child custody decrees the doctrine of res judicata is universally held to apply only to the facts and circumstances which existed at the time the decree was entered. It is the general rule everywhere today that a change in circumstances affecting the welfare of the child warrants a redetermination of custody by a court having jurisdiction over the child.[4] The fact that the mother surrendered custody to appellee solely due to her physical incapacity, her subsequent recovery, the preference of the adolescent female child to the company of her mother and older sister, and appellee's apparent indifference and unconcern for the welfare of his children given him under the decree are all factors indicating adequate grounds to reopen the custody issue on the basis of changed circumstances.

But we do not believe that legal custody is the *sine qua non* of the right to maintain this action. The custody decree

may affect appellant's right to recover against appellee in Florida, the responding jurisdiction, depending upon whether the courts there find appellee has violated or performed his duties under that decree and is no longer entitled to the benefits of it. We are not concerned with recovery for the moment, however, but merely with the right of appellant to bring an action in this the initiating jurisdiction. Our Code allows a complaint to be instituted on behalf of a minor dependent by "any person or agency as next friend of the minor * * *."[5] When this jurisdiction adopted the Uniform Act legal custody was not made a criterion to the right of the next friend to maintain the action on behalf of the minor dependent as it was in the model draft of the Uniform Act as adopted by Florida.[6] Thus, we feel a person may institute proceedings under the Act regardless of the fact that a custody decree is outstanding, though, as we have pointed out, there would seemingly be little difficulty factually to reopen the custody issue in this jurisdiction. Nor would it be plausible to force counsel for appellant to take this step. Unless personal jurisdiction over appellee was acquired the decree of this jurisdiction would not be binding on him,[7] and support proceedings begun subsequent to a new custody decree from our courts would not advance this cause beyond the point it has progressed thus far. It would still be incumbent on the Florida courts to determine under their law if appellee was in violation of his legal duty to support his child under the terms of the Florida decree whether or not we force counsel for appellant to secure a new custody order not binding on appellee. Since this would be a useless act, and one not required by our Code, we should not require it to be done.

---

3. May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221; Kraft v. Kraft, D.C. Mun.App., 155 A.2d 910.

4. Dawn v. Dawn, 90 U.S.App.D.C. 226, 194 F.2d 895; Boone v. Boone, 80 U.S. App.D.C. 152, 150 F.2d 153; Cook v. Cook, 77 U.S.App.D.C. 388, 135 F.2d 945; Minick v. Minick, 111 Fla. 469, 149

So. 483; 17A Am.Jur., Divorce and Separation, §§ 993, 995–96.

5. Code 1951, § 11–1609 (Supp. VIII).

6. F.S.A. § 88.131: "A complaint on behalf of a minor obligee may be brought by a person having legal custody of the minor * * *."

7. May v. Anderson, supra.

██ One other observation in connection with the Florida decree merits comment. The trial court seems to have been influenced by the fact that it specifically abated support money payable to the mother for the care of the two children; the court expressly stated it could not revive support payments in the face of such abatement. That provision was bottomed on the condition that appellee support them in his own home, a thing he has not done for over two years and which he does not seem particularly anxious to do now. More important, the abatement of support money was necessary due to the original decree of divorce and custody having granted an express amount of support money to the mother for the care of the children. A decree which is not final as to child custody is not final as to the amount of support money or the duty to pay incident to it. The duty of support follows custody and if the latter changes, the requirements for support money must necessarily be reflected, but that does not add to the strength of the decree.

█ We turn now to the choice of law which must govern this case. In the foregoing discussion we have indicated that the law of this jurisdiction applies in determining the right of a plaintiff to institute proceedings under this Act. We think that orderly simplified procedure, which is the basic aim of the Act, demands that the initiating jurisdiction determine at the outset whether a complainant is qualified under its own law to maintain the action. The duty of our courts, when the District of Columbia is the initiating jurisdiction, is to ascertain if "the defendant owes a duty of support" in the sense of there being an obligor-obligee relationship like that of husband-wife or parent-child.[8] Thereafter, the applicable law to determine defendant's liability for the breach of that duty is governed by the law of the responding state.[9] This view limits the choices available to the obligee under Code 1951, § 11–1604 (Supp. VIII),[10] but we think it represents the prevailing thought in the country today. At any rate, Florida has followed the example of the model draft of the Uniform Act and enacted but one choice of law—that of the responding state.[11] The Florida Supreme Court has said:

"[T]he *duty of support* enforced under the Act is not necessarily that imposed by the law of the initiating state; it is that 'imposed or imposable under the laws of any state where the *obligor* was present during the period for which support is sought' which is presumed to be the *responding* state 'until otherwise shown.' * * * The jurisdiction of the court of the initiating state extends only to approving the petition of the obligee and certifying that, on its face, a duty of support appears. * * * It then becomes the duty of the court of the responding

8. Code 1951, § 11–1610 (Supp. VIII).

9. Edmonds v. Edmonds, D.C.Mun.App., 146 A.2d 774. See also Lambrou v. Berna, 154 Me. 352, 148 A.2d 697; Rosenberg v. Rosenberg, 152 Me. 161, 125 A.2d 863; Daly v. Daly, 21 N.J. 599, 123 A.2d 3; Commonwealth v. Mong, 160 Ohio St. 455, 117 N.E.2d 32.

10. "Duties of support enforcible under this chapter are those imposed under the laws of any State in which the defendant was present during the period for which support is sought, or in which the dependent was present when the failure to support commenced or where the dependent is when the failure to support continues. * * *"

11. F.S.A. § 88.081: "Duties of support applicable under this chapter are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. * * *" In the annotations appended to this section is the following: "When a support action is maintained under the Uniform Reciprocal Enforcement of Support Law against an obligor residing in Florida for purpose of procuring prospective and continuing support for the future, Florida law governs questions whether obligor is legally liable for such support." Op.Atty.Gen. 057–262, Aug. 29, 1957.

state to examine the petition and if it 'finds a duty of support, it may order the defendant to furnish support or reimbursement therefor and subject the property of the defendant to such order.' * * * [I]t is the *duty of support* that is certified to by the initiating state and * * * the *amount of such support,* as well as a further finding as to the duty of support, must be determined by the court of the responding state * * *."[12]

It would be idle for this court, in view of such positive indications from Florida on how it intends to treat complaints forwarded to it under the reciprocal support Act, to speculate on the applicability of local law regarding appellee's apparent breach of parental duty imposed on him by law and by the Florida decree. It may be true as an abstract proposition that the duty of a father to support his child in a factual situation like that before us is the same in both Florida and the District of Columbia. But the precise problem in this case is not to trace appellee's responsibility to his child, but to determine first what law is to be used in that determination, and second, upon what court does the duty of applying that law devolve. Florida has said the law of the responding jurisdiction will be used to determine the duty of support, and it is to be applied by the courts of that state as they interpret it. We think this view commends itself both in logic and practicability.

 In summary, our conclusions in this case are as follows. Appellant has shown an obligor-obligee relationship sufficient to establish, under our law, a prima facie case for reciprocal support. The Florida custody decree is not res judicata if changed circumstances exist and is not a bar to the action; but even if the decree were final, legal custody is not a prerequisite to maintaining a reciprocal support action as next friend of the minor. Finally, the courts of Florida must determine, under their law, whether appellee's conduct con-

stitutes a violation of his parental duty of support imposed by law and by the decree, and whether appellant is entitled to support money in that event. For these reasons the dismissal by the court of the complaint initiating reciprocal support proceedings was erroneous, and the cause is remanded with instructions to certify appellant's complaint to the proper Florida authorities in compliance with the Act.

Reversed and remanded.