**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5442-17T3

BLAIR LAZAR,

     Plaintiff-Appellant,

v.

KERRI LAZAR, n/k/a
KERRI WEISS,

     Defendant-Respondent.

_____

     Argued September 9, 2019 – Decided October 2, 2019

     Before Judges Fasciale and Moynihan.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1045-13.

     Stephanie Palo argued the cause for appellant (Buchan & Palo, LLC, attorneys; Stephanie Palo, of counsel and on the brief).

     Brian D. Winters argued the cause for respondent (Keith, Winters & Wenning, attorneys; Brian D. Winters, on the brief).

PER CURIAM

Plaintiff Blair Lazar (Husband) appeals from portions of the Family Part judge's April 27, 2018 order denying relief he sought regarding parenting time and children-exchange related to provisions in the parties' matrimonial settlement agreement (MSA)—which was incorporated in their August 2015 dual judgment of divorce—and the judge's subsequent order denying his motion for reconsideration and granting other relief to defendant Kerri Lazar (Wife).[1]

Because Judge Kathleen A. Sheedy's findings are supported by adequate, substantial, credible evidence and she did not err, as a matter of law, in enforcing the parties' MSA and refusing to modify same, and the judge did not abuse her discretion in denying Husband's motion for reconsideration, we affirm.

The parties' MSA provides parenting time as follows:

> The parties shall alternate weekends, specifically from Friday after school or camp through Monday to school or camp; Husband shall enjoy overnight parenting time with both children every Wednesday; and Wife shall enjoy every Monday and Tuesday; Husband shall enjoy overnight parenting time with [the parties' son] every Thursday except the Thursday prior to the Wife's second weekend of parenting time when the Husband will enjoy overnight parenting time alone with [the parties' daughter].

---

[1] We use the designations of "Husband" and "Wife" for clarity as they are consistent with the terms the parties utilized in their MSA.

A-5442-17T3

Children-exchange parameters were also spelled out:

> The party receiving the child and/or children shall pick them up and drop them off at either school or camp. In the event an exchange of the children occurs on a holiday or a non-school or non-camp day, then pick-up and drop-off shall occur at the bank at 10:00 a.m. unless otherwise set forth herein, until such time as Dr. Baszczuk[2] recommends curbside or not which shall be binding upon the parties, at the Wife's home with the Husband stopping his vehicle at the Wife's mailbox and remaining in the vehicle and the Wife remaining in the home and no third parties outside of Wife's property or outside Husband's vehicle.

As to his first motion, Husband argues the judge erred in denying his request for 50-50 parenting time with the parties' children—born September 1, 2005 and July 14, 2007—"such that Wife has custody on Monday and Tuesday, Husband has custody on Wednesday and Thursday, with the weekends being alternated between the parties[.]" Husband essentially sought an additional day with the children: Thursdays. He also contends the judge erred in denying his proposal to have the children "walk for exchanges, with a text sent to the receiving parent 15 minutes prior, and a text sent upon arrival, with exchange at the bank when transfer by walking or school/camp bus are not utilized."

---

[2] Dr. Patricia Baszczuk was, at one point, the parties' co-parenting therapist. Dr. Charles Diament is the co-parenting therapist referenced in the appealed orders.

A-5442-17T3

Judge Sheedy, in a comprehensive and well-reasoned twenty-eight page written decision that recognized both parties' arguments, denied without prejudice Husband's requested parenting-time modification and required "the parties to work with [their co-parenting therapist] to discuss" that proposed change.[3] The judge also denied Husband's proposed children-exchange and similarly directed the parties to discuss that issue with the co-parenting therapist.[4]

Contrary to Husband's present arguments that the judge abdicated her decision-making power by requiring the parties discuss the contested issues with the co-parenting therapist and that the judge failed to consider the best interests of the children in denying the parenting-time modification, Judge Sheedy cogently analyzed the law regarding the parties consensual MSA and the modification of same in her written decision before denying "Husband's requests to change the roles of the professionals as set forth in the parties' MSA" and enforcing the provisions of "the parties['] bargained for and consensual MSA."

---

[3] The judge also denied Wife's request to modify the parties' parenting-time agreement and also directed the parties to discuss those issues with the co-parenting therapist. Wife did not appeal the judge's order.

[4] The judge denied Wife's request that the co-parenting therapist provide his written clinical recommendation regarding curbside exchange to the court "as the parties will discuss same with [the therapist]."

A-5442-17T3

Considering our limited scope of review of Family Part orders, and recognizing the deference due to the family courts because of their "special jurisdiction and expertise" in family law matters, Cesare v. Cesare, 154 N.J. 394, 413 (1998), yet exercising our plenary review of a Family Part "judge's legal conclusions, and the application of those conclusions to the facts," Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)), and a de novo review of the MSA provisions, Quinn v. Quinn, 225 N.J. 34, 45-46 (2016); Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011), we affirm substantially for the reasons set forth in Judge Sheedy's written decision.

We note that in their MSA, the parties agreed to attend co-parenting therapy. Furthermore, the parties agreed "they shall use good faith efforts to address with the co-parenting therapist a 50-50 parenting arrangement in the future." Paragraph 41 of the MSA provides:

> The parties agree that if a dispute arises in connection with the custodial provisions of this Agreement or the custodial provisions contained in a related judgment, order or agreement, they will attempt to resolve the dispute first with the co-parenting therapist, then with the Parenting Coordinator if no agreement reached with the co-parenting therapist. If that fails, then either party shall have the right to address the matter to the [c]ourt on notice. The [Parenting Coordinator] and co-parenting therapist['s] recommendations agreed upon

5

by the parties shall be enforced, without the need for a "Consent Order" as provided in paragraph 2 of [the Consent Order Appointing Parent Coordinator (COAPC)].[5]

Judge Sheedy properly held the parties to their agreement. Unlike the inapposite cases relied upon by Husband, the judge did not foreclose the parties' access to the court or impose restrictions on access that were not bargained for. The parties were merely obliged to follow the MSA terms requiring that they first attempt to resolve parenting disputes with the co-parenting therapist. Failing that—and, in accordance with the MSA—the parties were free to apply to the court; notably, the judge denied the motion without prejudice.

And, in considering the children's best interests, Judge Sheedy acknowledged the important requirement that the court "strain every effort to attain for the child the affection of both parents," citing in In re Jackson, 13 N.J. Super. 144, 148 (App. Div. 1951), as well as the public policy that children of separated parents should have the love and respect of both parents for the general welfare and happiness of the children, Daly v. Daly, 21 N.J. 599, 604-05 (1956). The children's best interests were at the heart of her decision to require the parties to adhere to the negotiated dispute-resolution process which she fostered

---

[5] The COAPC was incorporated in the MSA.

A-5442-17T3

by granting Husband's request that "the children's therapist, the co-parenting therapist, and the [parenting coordinator] . . . communicate . . . amongst themselves as they deem necessary," while maintaining the confidentiality of the co-parenting process as requested by Wife. Judge Sheedy found:

> based on the high-conflict nature of the parties' situation and the continuous inability of the parties to co-parent in an emotionally and developmentally appropriate manner to promote the best interests of their children, it is imperative that all of the professionals involved in this case have the ability to exchange information and recommendations to ensure that the best interests of the children are at least fostered by these helping professionals if not by the children's parents.

We are thus unpersuaded by Husband's arguments, especially considering the judge's comprehensive twenty-seven page written decision addressing, in part, Husband's motion to reconsider her initial ruling on the parenting-time and children-exchange issues. Judge Sheedy clarified that, although the parties were to discuss the issues with the co-parenting therapist, she did not abdicate her responsibilities to the therapist, noting that her prior order did not require the co-parenting therapist to make decisions. The judge sought to employ the applicable MSA provisions which she determined made "clear that the co-parenting therapist is to try to get the parties to effectively co-parent." The judge was "not satisfied that . . . Husband actually followed the [c]ourt['s] [o]rder and

7

the parties' agreement which made it clear" they "were to [first] discuss parenting[-]time" and children-exchange issues with the co-parenting therapist. Instead, it appeared to the judge that the co-parenting therapist offered dates, but appointments were never scheduled. Judge Sheedy reminded the parties that they "must comply with their bargained for MSA, and must learn to communicate with each other as adults, and the parents of their children."

We review the denial of a motion for reconsideration for an abuse of discretion, Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996), which occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). We perceive no abuse in discretion in the judge's denial of Husband's motion to reconsider her ruling on the parenting-time and children-exchange issues. See R. 4:49-2; see also Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). As the judge ruled, the parties were required to follow the terms of their MSA, not only to resolve their disputes but to learn to effectively co-parent, a goal that is certainly in their children's best interests. Neither the co-parenting therapist nor the parenting coordinator were to make decisions, which the judge

made clear she was prepared to address if the parties' efforts were not fruitful. Indeed, the MSA provides, "[t]he parties shall continue the appointment of a Parenting Coordinator as set forth in the [COAPC]." The COAPC provides "[t]he [p]arenting [c]oordinator shall not have authority to conduct parenting[-]time or custody evaluations or to make recommendations concerning said issue." It delineates the parenting coordinator's scope of authority and outlines she or he is authorized to make recommendations about issues that may include:

- Interpretation and implementation of the parties' existing Parenting Time Order.

- Dates, time, places, and conditions for transitions between households.

- Temporary variation from the schedule for a special event or particular special circumstance.

- Information exchange (school, health, social, etc.) and communication about the children.

- Clarification of provisions in the existing Parenting Time Order including, but not limited to, holiday and vacation plans.

- Communications with the children when they are in the other household.

If the parties could not heed the judge's call to "work together" to resolve issues through their chosen procedure—what Judge Sheedy aptly described as "an elaborate system [they devised] to help them reach an agreement"—they

9

were free to apply to the Family Part who would then decide if changed circumstances or the children's best interests require a modification of the MSA and whether a plenary hearing is necessary.

We, likewise, discern no abuse of discretion in the judge's denial of the balance of Husband's motion for reconsideration, and we also affirm substantially for the reasons Judge Sheedy delineated in her written opinion. In granting, in part, Husband's requests regarding the MSA and COAPC provisions about the extent of the parenting coordinator's role, the judge, again, merely enforced the parties' MSA. Husband's argument that the judge "unjustifiably found that a plenary hearing would be required to interpret the parties' MSA" is entirely meritless. As Husband's counsel conceded at oral argument before us, the judge's comment was made during colloquy at oral argument and was not part of the judge's ruling. Judge Sheedy granted Husband's requested relief in accord with the MSA and COAPC terms, reiterating:

> The [c]ourt will not modify the parties' MSA or the COAPC in anyway, but will enforce the terms within both agreements as they pertain to the parties' use of the [parenting coordinator]. The parties are to continue to use both the co-parenting therapist and the parent[ing] coordinator as the agreement specifies.

We agree with her interpretation and decision.

The judge also denied Husband's request to modify the MSA provision that "[e]ach party shall be responsible for the co-parenting therapist['s] fees/time with the Husband paying 90% and the Wife paying 10% of same" to require the parties to equally split those fees. At oral argument, the judge stated to husband's counsel:

> And your client wants to do away with the therapist, that's the flavor I get from your papers. Your client wants to do away with the therapist because he has to pay [ninety] percent of the therapist. . . . He wanted to change the amount of the therapist, the cost of the therapist, and really he wants to rely solely on the parenting coordinator and that's not their agreement. Their agreement is therapy and coordinate, right?

The judge perspicaciously determined Husband's motive was financially driven to avoid the two-step process set in place by the parties' agreement, rejecting Husband's contention that "revision [was] necessary to prevent the continued abuse of the dispute resolution process agreed upon by the parties." Inasmuch as the judge concluded the parties had yet to avail themselves of that process vis-à-vis the issues presented by Husband, we see no error in the judge's decision to adhere to the MSA terms.

Husband also argues the judge erred in denying his request to have Wife pay her outstanding bill for the parent coordinator's fees. The judge denied the motion without prejudice because

11

> Wife certified that she is disputing charges incurred by the parties in their use of the [parenting coordinator]. Wife further certified that the amount the parties owe to the [parenting coordinator] may fluctuate based on the outcome of her grievance dispute with the [parenting coordinator]. At this time, the [c]ourt will not require Wife to remit payment within seven days based on her grievances with the [parenting coordinator].

We agree with her sound reasoning.

Husband also contends the judge erred by denying his request for a right of first refusal if Wife was out of the State without the children. The judge directed the parties to follow their MSA which provides: "The parties will address the right of first refusal which shall be defined as an overnight without the children with Dr. Baszczuk[, w]hich recommendation shall be binding if the parties reached an agreement." The judge also granted Wife's "request to enforce paragraph 31 of the MSA, such that the parties will address the right of first refusal" with the co-parenting therapist.

Husband also challenges the judge's decision to grant Wife's requests to enforce: "paragraph 42 of the MSA such that the other parent must be notified of any and all detailed medical information within 48 hours"; paragraph 56 of the MSA, designating the children's physicians and alternates; and paragraph 40 of the MSA, prohibiting negative behavior in the parties' communications

and requiring the parties follow specified "message rules and protocols established by the parent coordinator and/or co-parenting therapist[.]" The court reiterated, "Neither party shall engage in e-mail communication that is demeaning, degrading, accusatory, or which includes negative insinuations or the recounting of past history." In so granting those requests, the court repeated: "The [c]ourt, again, reminds both parties that they have a very detailed MSA, in addition to the hired help of a co-parenting therapist and [parenting coordinator]."

The judge's decision to enforce the parties' agreement and deny requests to modify same reflected the strong public policy "favoring the use of consensual agreements to resolve marital controversies." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). Judge Sheedy heeded the Konzelman Court's caution that "it 'would be shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves[,]'" Ibid. (quoting Petersen v. Petersen, 85 N.J. 638, 645 (1981)), and that "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)).

In light of the judge's authoritative decision, with which we wholly agree, we determine Husband's arguments regarding the reconsideration motion are without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5442-17T3