[Civ. No. 44270. Second Dist., Div. Four. Apr. 29, 1975.]

MARY LEE BANKS, Plaintiff and Respondent, v.
ARTHUR McMORRIS, Defendant and Appellant.

**COUNSEL**

S. Carter McMorris for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P.J.**—This is an action arising under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). It was brought by petitioner, Mary Lee Banks, who sought to compel appellant Arthur McMorris to continue support payments (and pay arrearages) pursuant to an Ohio open court compromise agreement.

Petitioner Banks, a resident of Ohio, was the mother of two illegitimate children. On April 24, 1958, she filed complaints in bastardy under Ohio Revised Code section 3111.01 against appellant McMorris alleging that he was the father of the two illegitimate children. A warrant was issued for his arrest; six months later he was apprehended. Appellant pleaded not guilty to the paternity charges and was released from jail after filing a bond. The case was set for a jury trial.

Before the matter was brought to trial, however, petitioner and appellant appeared in court with their attorneys and, pursuant to Ohio Revised Code section 3111.07, they agreed to a compromise settlement.[1] This agreement was, in accordance with the statute, entered on the docket of the trial judge. Under the terms of the compromise, appellant was to pay petitioner $25 per child per month.[2] At first, the payments were made with some regularity. But in October 1959, appellant moved to California and by April 1960, he had ceased to make any payments.

A petition was filed on October 8, 1971, by petitioner Banks under Ohio's RURESA, Ohio Revised Code section 3115.01 et seq., to compel appellant to begin making payments again. The petition was forwarded to California where appellant resided. Appellant answered and a hearing was held to determine if the compromise agreement voluntarily entered into in Ohio created a duty of support which was enforceable in California under RURESA. The trial judge concluded that it was. We agree.

---

[1]Revised Code section 3111.07 reads in pertinent part:

"[If the accused before judgment] pays or secures to be paid to the complainant such amount of money or property as she agrees to receive in full satisfaction of all claims she has individually against said accused arising out of said complaint, the court, judge or referee, with the approval of the judge, shall discharge the accused. . . . Such agreement must be made or acknowledged by both parties in the presence of the court. . . who shall enter a memorandum thereof on his docket or cause it to be made upon his journal."

Private settlements not entered on the docket do not fulfill the requirements of this section and are not recognized by Ohio courts. (See 7 Ohio Jur.2d, Bastardy § 27, at p. 458.)

[2]Under this statute, the question of paternity is specifically left unresolved.

I

Initially, appellant argues that a compromise or settlement agreement, even if voluntarily made or court approved, is not a judgment or order that is enforceable under the provisions of RURESA. He argues that the Ohio docket entry does not establish an obligor-obligee relationship between the parties, and that the "agreement" represents nothing more than a debt, or at most, a contract. He complains that an action to enforce it properly should be brought in another court.[3] ■ We find no merit in the argument as the language of RURESA is quite clear.

California Code of Civil Procedure section 1653, subdivision (b)[4] defines "duty of support" as "a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court whether interlocutory or final. . . ." The import and extent of this language was discussed by W. Brockelbank and F. Infausto in their book, Interstate Enforcement of Family Support (2d ed. 1971), as follows (pp. 38-39): ". . . in Section 2(f) [of the 1958 Act] 'duty of support' was defined to include 'any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial or legal separation, separate mainte- nance or otherwise.' . . . [¶] Despite this language, which is believed to be too clear to be mistaken, it is surprising to find misconceptions. One such is that only *orders* of support of one state will be enforced in another under the Act. In fact it is 'all duties,' and the duty, of course, may grow out of the order of support or a judgment or decree but is equally a duty if it never has received judicial attention and now is the basis of litigation for the first time under the Act." (Fn. omitted; italics in original.)[5]

---

[3]If appellant can require petitioner to sue for breach of contract, he would be liable only for past installments; if he can require her to sue under section 196a of the Civil Code, he could litigate the issue of paternity.

[4]That section is part of the California RURESA.

[5]That the concept "duty of support" covers a wider ground than simply judgments and orders, has become an idea of national scope. Although originally reciprocity outside of a judgment did not exist (Council of State Governments, Interstate Conference on Reciprocal Support, Summary, Sixth Annual Conference (1957) at p. 14), it soon became apparent that it was a coming trend. (*Id.* Ninth Annual Conference (1960) at p. 9.) Finally, it was noted that "[a]ttention was called to the fact that there is a significant difference between an informal agreement to support and an agreement which, although voluntary, is filed with the court and entered as an order. The latter type of agreement is enforceable through contempt or other standard legal procedures whereas an informal, unrecorded agreement is difficult to prove and enforce as a binding legal obligation." (*Id.* Twelfth Annual Conference (1963) at p. 2. See also Krause, Illegitimacy: Law and Social Policy (1971) at p. 56; *Brown v. Thomas* (1968) 221 Tenn. 319 [426 S.W.2d 496]; *Morway v. Morway* (Tex.Civ.App. 1970) 460 S.W.2d 531.)

■ The primary purpose of the act is to provide a person in one state with the means expeditiously to secure money for support from a person residing in another state who is legally liable for support. (*Porter* v. *Porter* (1971) 25 Ohio St.2d 123 [54 Ohio Ops.2d 260, 267 N.E.2d 299]; *Clark* v. *Clark* (1966) 246 Cal.App.2d 619 [54 Cal.Rptr. 875].)

The courts of Ohio long have considered that when an individual is compelled by statute to pay money for the support of illegitimate children, it is the enforcement of a moral duty (*Hawes* v. *Cooksey* (1844) 13 Ohio 242; *Kirkbride* v. *Eschbaugh* (1957) 4 Ohio Ops.2d 397 [77 Ohio L.Abs. 33, 147 N.E.2d 676]) and of a legal duty (*State* ex rel. *Wonderland* v. *Shuba* (1951) 91 Ohio App. 64 [48 Ohio Ops.2d 240, 107 N.E.2d 407]). ■ The fact that appellant here did not allow the statutory duty to be imposed via a judgment but chose a compromise agreement did not prevent a duty of support from arising. The agreement was a statutory remedy which permitted appellant to pay support for the children without his paternity being admitted or adjudged. RURESA is a remedial statute and should be liberally construed. (*Davidson* v. *Davidson* (1965) 66 Wn.2d 780 [405 P.2d 261, 265].) We find that the compromise agreement entered into in Ohio between petitioner and appellant was the type of duty contemplated under California Code of Civil Procedure section 1653, subdivision (b), and is, therefore, enforceable in California, in a RURESA proceeding.

## II

Appellant also raises several secondary issues. First, he argues that petitioner Banks was incompetent to file the petition as she was not the obligee. Code of Civil Procedure section 1675 provides that "[a] complaint on behalf of a minor obligee may be executed and filed by a person having legal custody of the minor without appointment as guardian ad litem." (*See also Harmon* v. *Harmon* (1959) 160 Cal.App.2d 47, 54-55 [324 P.2d 901], cert. den., 358 U.S. 881 [3 L.Ed.2d 110, 79 S.Ct. 120].) Appellant's argument is, therefore, without merit.

■ Second, appellant complains that he was served with a citation rather than a summons and that this did not give the court jurisdiction over him. Appellant's reliance on *Pousson* v. *Superior Court* (1958) 165 Cal.App.2d 750 [332 P.2d 766] is misplaced. In *Pousson,* the husband was served a citation and he *failed* to appear. The *Pousson* court found that the critical issue was the effect of the notice. (*Pousson* v. *Superior Court, supra,* 165 Cal.App.2d at p. 754.) As appellant here submitted himself to

the jurisdiction of the court, his argument of lack of jurisdiction is without merit.

■ Third, appellant contends that Ohio has failed to enact a "substantially similar reciprocal law" as contemplated by RURESA and that this prohibits a California court from enforcing the bastardy statutes of Ohio. Appellant is in error. California Code of Civil Procedure section 372 provides that the "guardian ad litem so appearing for any minor . . . in any action or proceeding shall have power, with the approval of the court in which such action or proceeding is pending, to compromise the same . . . ." This language is quite similar to that of Ohio Revised Code section 3111.07.[6] California law has consistently allowed compromises. (See also Prob. Code, §§ 1431 and 1510.) And California courts have long held that our filiation proceedings (Civ. Code, § 196a et seq.) are only a modified form of the early bastardy proceedings (*Schumm* v. *Beery* (1950) 100 Cal.App.2d 407 [227 P.2d 54]).

Fourth, appellant contends that to enforce this compromise would be against the public policy of California. In *Klinker* v. *Klinker* (1955) 132 Cal.App.2d 687 [283 P.2d 83], it was recognized that, so long as the standards of morality and general interests of the citizen of this state are not prejudiced, a foreign right will be enforced. ■ The fact that compromise agreements are provided for by law in this state (Civ. Code, § 196a et seq., *supra*) is sufficient to show that the law of Ohio on this point does not offend citizens of California.

Fifth, appellant argues that denial of trial by jury violated his constitutional rights. However, under California Code of Civil Procedure section 631, the right to a trial by jury is waived if jury fees are not posted within a proscribed time. This, appellant failed to do and he thereby forfeited this right. ■ Moreover, the only issue to be decided was a question of law, i.e.: whether a duty of support existed that could be enforced in California, and not a question of fact. The only question of fact to be resolved was whether appellant did enter into a compromise agreement in Ohio, a fact which he admitted. Thus, this was not a case to be tried by a jury even had appellant not waived the right by his failure to post fees.

Sixth, appellant complains that the deposition of petitioner Banks did not comply with either California or Ohio law. Initially, petitioner was not sworn before a judge or a notary as provided by Ohio law, but by a

---

[6]See footnote 1 *ante.*

referee who was not present during the remainder of the deposition. Appellant admits that he was permitted to ask questions, and, although he cryptically told the trial judge that some objections were made, he never indicated that he was prevented from pursuing any line of questioning. It is common practice for attorneys to conduct depositions in their offices without a judge (to rule on every objection) overseeing the action. ▮ If this one failure properly to swear-in the witness resulted in a technically flawed discovery proceeding, such error as occurred appears to be harmless.

Finally, appellant argues that the Ohio compromise agreement is void and does not conform to Ohio law as it was not a definite lump-sum agreement. Ohio Revised Code section 3111.07 provides as noted above, that the complainant mother may agree to be paid "such amount of money or property as she agrees to receive. . . ."[7] The statute does not specify that the payment must be in a lump-sum arrangement; nor does it prohibit the complainant from accepting periodic payments. Thus, the compromise agreement does not appear to be void under Ohio law.

For the reasons set forth above, the judgment of the trial court recognizing the existence of a duty of support is affirmed.

Dunn, J., and Cole, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1975.

---

[7]See footnote 1 *ante.*
*Assigned by the Chairman of the Judicial Council.