BERGEN COUNTY WELFARE BOARD (RE THE MATTER OF BERENDINA VERGA, A RECIPIENT OF ASSISTANCE), PLAINTIFF, v. RUSSELL CUEMAN, DEFENDANT.

Juvenile and Domestic Relations Court
Bergen County

September 19, 1978.

Mr. *Robert S. McEwan, Jr.,* attorney for plaintiff.

Mr. *Roy Failla,* attorney for defendant.

MINUSKIN, P. J. J. D. R. C. This matter was brought before the court by the Bergen County Welfare Board as assignee of the support rights of Berendina Verga pursuant to *N. J. S. A.* 44:1-140, 44:10-2 and 44:7-19.

The issue which faces the court is whether an agreement between a mother and father for the support of a child bars the Bergen County Welfare Board from instituting proceedings on the mother's behalf for reimbursement from the father of all assistance extended to her for the support of the child.

The essential facts are not in dispute:

Defendant Russell Cueman is the father of a child born out of wedlock to Berendina Verga (then DeHaas) on April 18, 1961. Pursuant to an order for support issued by the Municipal Court of the Borough of Lincoln Park in 1961, defendant made weekly payments to the mother until November 25, 1964, at which time he and the mother entered into an agreement which provided that in consideration of the payment of the sum of $500.00 he would be relieved of any further obligation to support the child. The language used relating to the pertinent portions is significant:

> NOW, THEREFORE, it is agreed between the parties that upon the payment of the sum of Five Hundred and 00/100 ($500.00) Dollars by Russell W. Cueman to Bernadine DeHaas, she agrees that the lump sum payment although it is meager compared to the total obligation of the father will be accepted as full payment of all past, present and future weekly payments due from the father to the child. The lump sum payment shall also cover doctor, medical and clothing obligations.

The mother subsequently married, and out of that union three children were born. The Vergas separated in 1971, and after an order for support proved to be insufficient to support Mrs. Verga and her family, she applied to the Bergen County Welfare Board for assistance for herself and her four children. Assistance has been extended to her

from that time to the date of this hearing. The amount of reimbursement sought by the Bergen County Welfare Board for the support of defendant's child is $5,649 through and including the month of August 1978.

## Public Policy

Public policy mandates that the responsibility of children is an absolute obligation which must be borne by the parents of the children, even if the children are born out of wedlock. "A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock." *N. J. S. A.* 9:16–2. It is defendant's contention, however, that after the execution of the aforementioned agreement by the parties he was free from further obligation to Mrs. Verga for the continued support of his child. The court finds this contention to be without merit.

An agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, *violates some public statute,* or tends to interfere with the public welfare or safety. *cf. Garlinger v. Garlinger,* 129 *N. J. Super.* 37, 40 (Ch. Div. 1974) mod. 137 *N. J. Super.* 56 (App. Div. 1975); 17 *Am. Jur.* 2d, *Contracts,* § 179 at 541. The enforcement of such agreements or contracts will generally be denied. *Veazey v. Allen,* 173 *N. Y.* 359, 66 *N. E.* 103 (Ct. App. 1903). Here, the fact that defendant acknowledged in the body of the agreement that the amount of money he agreed to pay was insufficient to meet his support obligations indicates that he knew full well that he was attempting to terminate his parental obligation of support.

In a similar proceeding the Supreme Court held that a release granted by the mother of an illegitimate child did not preclude her from bringing a subsequent proceeding against the father to enforce the statutory obligation to support the child, even though support was not necessary

to keep the child from becoming a burden on the community.

> It can hardly be seriously asserted that by a settlement of $400 the [illegitimate] child here, entitled by statute to the rights of any other child to care, education and maintenance, is forever precluded from receiving support from its father, unless the same is necessary to keep it from becoming a burden on the community. A reading of the statute plainly shows a contrary legislative intent. [*Kopak v. Polzer*, 4 *N. J.* 327, 333 (1950)]

The present case differs only to the extent that the child in question is a public charge and the subsequent proceeding was instituted, not by the mother of the child, but by a public agency seeking reimbursement of assistance.

There can be no doubt that the agreement in question contravenes *N. J. S. A.* 9:16-2 and, as it is against public policy, is unenforceable.

## Laches

Defendant also contends that the Bergen County Welfare Board should be barred by laches from bringing suit in that it failed to undertake an investigation to ascertain the responsible relatives chargeable for the support of this child immediately upon receipt of the mother's application for assistance.

The facts indicate that Mrs. Verga first applied for and received assistance in 1971. She subsequently executed two assignments of her support rights to the Bergen County Welfare Board[1]; the first on October 22, 1975, and the second

---

[1] *N. J. A. C.* 10:81-3.36, implemented in June 1975, introduced the concept of assignment of support rights. Before its implementation the several welfare boards in New Jersey had only one recourse of action, that is, to sue the husbands and fathers of children receiving assistance directly. This additional concept of assignment was introduced to assist welfare boards in collecting assistance in matters such as the one before the court in which support orders pre-existed applications for assistance. Under the present system the Bergen County Welfare Board, as assignee, receives the sup-

on January 26, 1978. The welfare board, however, did not bring this action until April 28, 1978. Defendant contends that in failing to conduct an investigation and inquiry at the time of the initial application for assistance, the welfare board was in violation of the terms of *N. J. S. A.* 44:10–1(c)(3). Defendant argues that had the welfare board conducted a timely investigation it would have become apparent that there was an agreement between the parties, and that had he been contacted, he would have had an opportunity to provide for the child's adequate support and prevent Mrs. Verga's action from creating the obligation which subsequently arose.

An examination of the statutes cited by defendant as authority fails to disclose any provisions dealing with the time in which the board must conduct such investigations. *N. J. S. A.* 44:10–1(c),(3) defines a "dependent child" as a child under the age of 18 (or 21 if a student regularly attending school) who "is found, after due investigation and determination, according to the standards and procedures established pursuant to this act, to be eligible for financial assistance." One then turns to *N. J. S. A.* 44:10–2 which provides that eligible dependent children and those with whom they are living shall be entitled to receive financial assistance and other services "which shall be administered in accordance with and governed by requirements, conditions, limitations and procedures similar to those established by chapter 7 of Title 44 of the Revised Statutes." Referring to chapter 7, *N. J. S. A.* 44:7–19 provides that the county director of welfare "shall ascertain, if possible, the relatives and other persons chargeable by law for the support of such applicant, and proceed to obtain their assistance for such

---

port payments and the recipients of assistance receive the basic flat monthly rate without any variation due to payments pursuant to various support orders. All support received in this matter is credited against assistance extended.

applicant or to compel them to render such assistance as is provided by law in such cases."

While the statutes require the welfare board to conduct an investigation, no time limitations within which the investigation must be completed are set forth therein. The fact that an investigation was conducted is borne out by this very proceeding. Accordingly, the court finds that the welfare board complied with the provisions of *N. J. S. A.* 44:10–1(c)(3).

The defense of laches must also fall because defendant has not shown that he has been unreasonably harmed by the delay. Laches is an equitable defense, and "the party urging its application must show that his adversary, without explanation or excuse, delayed in asserting a claim now stale, that the delay was unreasonable under the circumstances, and that it 'visited prejudice upon the party asserting the delay.'" *Allstate v. Howard Savings Inst.,* 127 *N. J. Super.* 479, 489 (Ch. Div. 1974); *Mitchell v. Alfred Hofmann, Inc.,* 48 *N. J. Super.* 396, 403 (App. Div. 1958), certif. den. 26 *N. J.* 303 (1958). Defendant is, of course, distressed by the fact that he must repay assistance in excess of $5,000; however, he has not indicated how he could have avoided this responsibility other than the speculation that had he been contacted earlier, he would have had an opportunity to provide for the child's adequate support and prevent Mrs. Verga's actions from creating the obligation which subsequently arose. This may be true, but the fact is that whatever support the welfare board has extended covers nothing more than the basic necessities. Had defendant been contacted earlier and required to support the child it would undoubtedly have cost him a great deal more. Therefore, the court determines that defendant cannot be heard to say that he was substantially harmed or prejudiced by the delay.

It is also an established rule of equity that a defendant cannot have the benefit of the defense of laches when his own actions have created the inequity. Where a

party interposing the defense of laches has contributed to or caused the delay, he cannot take advantage of it. *Pierce v. I. T. T. Corp.*, 147 *F. Supp.* 934 (D. C. N. J. 1957). In the present case it was defendant who attempted by an agreement to avoid payment of all child support and educational and medical expenses for the sum of $500. Had defendant not sought to avoid his statutory duty, his child would not have needed public assistance.

In summary, the court finds that the agreement between Berendina DeHaas and Russell Cueman is void as against public policy in its attempt to discharge defendant of his parental obligations to support and maintain his child as is required by the laws of this State. The court further finds that the defendant has an obligation to pay the Bergen County Welfare Board the sum of $5,649 as reimbursement of assistance extended to his child from July 1971 through and including August 1978. The court rejects the defense of laches inasmuch as defendant has not been prejudiced by the filing of the complaint and because he cannot assert this defense in good faith due to his failure to support his child from November 1964 through and including the date of this hearing.

Though the welfare board has appeared and requested that all arrearages based on the grants made to the infant's mother be paid, the court, based upon the evidence submitted, finds that defendant is unable to pay the Bergen County Welfare Board the amount due in one lump sum. In the exercise of its discretion, and after considering the income and expense statement submitted by defendant, the court does hereby order that he shall repay the welfare board at the rate of $25 a month and pay child support at the rate of $25 a month, all payments to commence October 1, 1978. All child support payments assigned to and received by plaintiff Bergen County Welfare Board shall be credited against assistance extended and shall be made through the Probation Department.