**Dennis L. JOHNSON,
Defendant-Appellant,**

v.

**Gloria Jean ROSS, Plaintiff-Appellee.**

**No. 2–679A185.**

Court of Appeals of Indiana,
Fourth District.

June 10, 1980.

Rehearing Denied Aug. 4, 1980.

Larry E. Swick, Lockwood & Swick, Alexandria, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

MILLER, Presiding Judge.

This is an appeal from a judgment of the Madison Circuit Court which ordered defendant-appellant Dennis Johnson to pay $25.00 per week child support pursuant to an action brought under the Uniform Reciprocal Enforcement of Support Act.[1]

We affirm.

The Uniform Reciprocal Enforcement of Support Act [hereinafter referred to as the Act], the broad purpose of which is to improve and extend enforcement of support duties through uniform laws, allows a plaintiff-petitioner residing in one state or Indiana county to bring an action for support which may be enforced by a court in another state or Indiana county having jurisdiction over the defendant. This case involves the intercounty application of the Act where both parties are residents of Indiana. IC 31–2–1–31. Gloria Ross filed a petition in 1977 in the Boone Circuit Court which in substance alleged the following: Johnson resided in Madison County; he was the father of a minor child, Angela Dorine Johnson, born out of wedlock in 1965; the parties were married in 1967; Johnson thereafter, in 1970, executed an "Affidavit of Legitimation" with respect to the child at the Boone County Board of Health; the parties were granted a dissolution of marriage in 1971; no support was ordered in that dissolution proceeding because Johnson, who filed for the dissolution, alleged in his petition that no children were born of their marriage; since 1971 Johnson had not provided for the child and should be required to do so.

Johnson filed an answer stating he was not the father of Angela and in fact was in Europe at the time she was conceived, the purported legitimation papers stating he was the father were invalid, and there had never been an adjudication recognizing a duty on Johnson's part to provide support for Angela.

The cause was submitted to the Madison Circuit Court for trial without intervention of a jury. At trial both parties asserted Johnson was not the father of Angela.[2]

---

1. Ind.Code 31–2–1–1 et seq.

2. Johnson further testified he was in Europe with the United States Army from August, 1964, until June 1, 1966 and that he did not return to the United States during this period. He did not testify he did not see petitioner

The evidence established without dispute, however, that during the parties' marriage Johnson voluntarily executed an "Affidavit of Legitimation," a document admitting paternity and on its face intended to create legitimacy, apparently employed by the State Board of Health when a party desires to have a child born out of wedlock bear his name on a birth certificate.[3] In that document Johnson acknowledged "without reservation that I accept the responsibilities as a father" of Angela and that "[i]n making the above sworn statement, I fully recognize the paternity of a child now known as Angela Dorine Johnson and accept the responsibility attached thereto." A new certificate bearing Johnson's name was issued, and during the course of the marriage he provided food, clothing and shelter for the child.

■ We note at the outset Johnson is mistaken in his assertion that an action under the Act requires a pre-existing judicial determination of support duty. He correctly concludes the Act does not "create" obligations of support. It does, however, enforce such responsibilities, and broadly defines "duty of support" to include "any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." IC 31–2–1–2(f). It is evident no previous court judgment is required to create an obligation which is "*im-posable*" by law. *Banton v. Mathers*, (1974) 159 Ind.App. 634, 309 N.E.2d 167 (the Act's remedy need not be predicated upon a divorce decree); *Olson v. Olson*, (Mo.App. 1976) 534 S.W.2d 526; *Banks v. McMorris*, (1975) 47 Cal.App.3d 723, 121 Cal.Rptr. 185. *Olson* correctly observed "[a] duty of support 'imposable by law' is one arising out of a relationship—a duty of support *to be adjudicated*" (emphasis in original). 534 S.W.2d 530. And in *Banks*, the Court, in construing a statutory provision identical to ours, endorsed the view that

" '[d]espite this language, which is believed too clear to be mistaken, it is surprising to find misconceptions. One such is that only *orders* of support of one state will be enforced under the Act. In fact it is "all duties," and the duty, of course, may grow out of the order of support or a judgment or decree but is equally a duty if it never has received judicial attention and now is the basis of litigation for the first time under the Act.' "

(Emphasis in original.) 47 Cal.App.3d 727, 121 Cal.Rptr. 188 (*quoting* W. Brockelbank & F. Infausto, Interstate Enforcement of Family Support 38–39 (2d ed. 1971).[4]

■ The sole remaining question in this action is whether Johnson has a legally imposable obligation of support. We conclude there is ample evidence in the record to determine Johnson is the biological father of the minor child and that he consequently owes such a duty.[5]

---

during this period, nor was evidence presented regarding her whereabouts during those years.

**3.** IC 1971, 31–4–2–1 (Burns Code Ed.) (repealed effective Oct. 1, 1979) provided that where the mother and true father of a child born out of wedlock subsequently marry, the father may file an affidavit with the Board of Health stating he is the father to have the surname of the child changed to that of the father. For the current provision see Ind.Code 31–6–6–22.

**4.** It should also be noted in this context the Act states "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." IC 31–2–1–3.

**5.** Pursuant to Ind.Code 31–1–11.5–3, an action may be brought to require support of a child of both parties to a marriage, including the circumstance in which the child is born out of wedlock to such parties. Ind.Code 31–1–11.5–2(c).

Johnson does not challenge the jurisdiction of the trial court by claiming an action for paternity should have been brought pursuant to the Children Born Out of Wedlock Act, IC 1971, 31–4–1–1 *et seq.* (Burns Code Ed.) (repealed effective Oct. 1, 1979). It has been held, however, there are circumstances involving a genuine question of paternity in which such a paternity action, rather than an action for support pursuant to a dissolution, is necessary. *Profitt v. Profitt*, (1965) 137 Ind.App. 6, 204 N.E.2d 660. But in that case, the children were born during a previous marriage and hence presumed to be the issue of the plaintiff's husband in that previous marriage, and the defendant (her subsequent husband) had not acknowl-

Johnson contends there was insufficient evidence to support a determination by the trial court that he was the natural father of Angela.[6] In considering this argument we note it is not the province of this Court to weigh the evidence or to determine the credibility of witnesses. *E. g., B & T Distributors, Inc. v. Riehle*, (1977) 266 Ind. 646, 649, 366 N.E.2d 178, 180. Moreover, an appellant court is not empowered to reverse the judgment of a trial court unless the record discloses there were no facts or inferences based therefrom to sustain its judgment. *Id.* It is true Johnson now states he did not intend to acknowledge Angela when he executed the affidavit, although that document recited he accepted "without reservations" his responsibilities as a father.[7] Both Ross and Johnson state he was not Angela's father and that they visited the Board of Health office where the affidavit was signed in order to change the minor child's name. We do not believe, however, that the uncon-

tradicted testimony of alleged parents must always be accepted as true where a duty of support is in issue, particularly where that testimony is in conflict with the parties' earlier statements and actions. See *Hooley v. Hooley*, (1967) 141 Ind.App. 101, 226 N.E.2d 344, where the Court held:

"Although both Rosie and Bradley Wilson directly denied sexual intercourse during the time Diane Kay Hooley could have been conceived, the fact of legitimacy should be determined from a consideration of all of the evidence submitted, giving due weight to all collateral facts that reasonably and naturally affect the value of the testimony."

*Id.* at 109–110, 226 N.E.2d 349. In the instant case, Johnson, in the presence of Ross, his wife at that time, signed a notarized "Affidavit of Legitimacy" stating he "fully recognize[d] the paternity" of her child, and as a consequence the child was given his name. As noted above, this action

edged them as his own. The facts of the instant action, by contrast, disclose Johnson did expressly acknowledge the child, a new birth certificate was issued, and he provided for the minor child during the marriage.

Johnson does contend this action is barred by IC 1971 31–4–1–26 (Burns Code Ed.) (repealed effective Oct. 1, 1979), the two-year statute of limitations relating to paternity actions. We note, however, the record discloses that argument has been waived and should not be considered on appeal. Limitation of actions is an affirmative defense which must generally be set forth in a responsive pleading. Ind.Rules of Civil Procedure, Trial Rule 8(C). Although the defense may in certain circumstances be raised at trial, Ind.Rules of Civil Procedure, Trial Rule 12(B)(8), this Court has held in all circumstances where a party files an answer he must state therein all affirmative defenses. *American Underwriters, Inc. v. Curtis*, (1979) Ind.App., 392 N.E.2d 516, 519 n.4. These rules are applicable to all proceedings of a civil nature. Johnson waived this argument by failing to advance it at the appropriate time. The statute of limitations defense was not raised in his answer or at trial but was presented for the first time in Johnson's motion to correct errors.

6. The judgment of the trial court did not set out specific findings of fact, but rather simply concluded "respondent herein [is] responsible for the support of Angela Dorine Johnson." Johnson states in his motion to correct errors that the court's judgment is contrary to law absent a finding that he was the father. Johnson did

not, however, request such findings of fact in a motion pursuant to Ind.Rules of Civil Procedure, Trial Rule 52; nor does he present a cogent argument on this question on appeal. Ind.Rules of Civil Procedure, Appellate Rule 8.3.

7. Johnson also argues the affidavit is ineffective as an acknowledgment because, although stating on its face it is authorized by Ind.Code Ann. § 35–1807 (Burns 1969) [Ind.Code 16–1–16–7] and Ind.Code Ann. § 35–1816 (Burns 1969) [Ind.Code 16–1–16–16], the affidavit was not executed in compliance with those statutes. The cited statutes respectively allow the State Board of Health to make changes in a birth certificate "upon receipt of adequate documentary evidence" and allow a local health officer to accept a new birth certificate for an illegitimate child if the certificate is filed within six months of a marriage between the mother and the alleged father. Johnson argues the affidavit was improperly executed because it was executed more than six months after the parties' marriage. Whether or not Johnson is correct in his reading and application of these statutes, the issue in this case is not whether a birth certificate was properly altered, but rather whether Johnson admitted his paternity of the child. The affidavit in question states Johnson accepted the responsibilities of a father "without reservation" and during the marriage of the parties he acted in accordance with this unambiguous acknowledgment.

was avowedly taken "without reservations" and during the course of the marriage Johnson provided for Angela. In light of these facts the trial court may reasonably have concluded he is in fact the father, regardless of the parties' present testimony to the contrary. Nor does the intervening dissolution action mandate a judgment for Johnson. Thus, although there was testimony by Johnson that he alleged in a dissolution petition there were no children "born of the marriage," we note the record does not contain either the petition itself, or even evidence of findings of fact by the court granting the dissolution. Moreover, whether Angela was born *of the marriage* is not here in dispute; both Ross and Johnson agree she was born prior to their marriage. It cannot be supposed such evidence would obviate a parent's duty to support children born outside a marriage.

The judgment of the trial court is affirmed.

YOUNG and CHIPMAN, JJ., concur.