COMMONWEALTH OF VIRGINIA, ETC., EX REL.
HELEN HALSEY v. KENNETH AUTRY

[No. 13, September Term, 1981.]

*Decided March 8, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Joseph B. Spillman, Jr., Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Cynthia M. Ferris, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellant.

*Steven F. Brown,* with whom were *The Legal Clinics of Cawley & Schmidt, P.A.* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the question whether a Maryland court, acting pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), Maryland Code (1957, 1979 Repl.Vol.), Art. 89C, has the authority to order a parent to support an illegitimate child, notwithstanding the fact that a court in another jurisdiction has vacated its prior order imposing a duty of support.

On 4 January 1972, the Juvenile and Domestic Relations Court for Bergen County, New Jersey (New Jersey Court), adjudicated the appellee, Kenneth Autry (father), to be the father of Cynthia Halsey (child), born 31 October 1971. The New Jersey Court ordered the father to pay $10.00 per week to the Bergen County Welfare Board for the support of the child. On 23 April 1973, the New Jersey Court ordered the father to pay $20.00 per week for the support of the child. On 4 June 1975, the New Jersey Court, at the request of the child's mother, vacated the 23 April 1973 order of support, reserving any arrearages to the Bergen County Welfare Board.[1]

---

1. The 23 April 1973 order does not appear in the record.

Since 1 May 1978, the child has been in the physical custody of Helen Halsey, her maternal grandmother (grandmother). She has resided with her grandmother in Virginia, and has received public assistance benefits from that state. The grandmother has been designated as the payee of these benefits.

On 14 November 1979, in the Juvenile and Domestic Relations District Court of Wythe County, Virginia (Virginia Court), the Virginia Department of Welfare filed a petition on behalf of the grandmother pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, Va. Code § 20-88.19 (1950, 1975 Repl.Vol.). The petition sought support in the amount of $119.00 per month and reimbursement for public assistance paid from 1 May 1978.

At the time the petition was filed the father was residing in Glen Burnie, Maryland. The Virginia Court, pursuant to Va. Code § 20-88.22, transmitted the petition to Maryland where it was filed in the Circuit Court for Anne Arundel County pursuant to Md. Code, Art. 89C, § 18.

On 14 October 1980, after a hearing, the trial court entered an order dismissing the petition. In that order, the trial court, relying on *Chance v. LaPausky,* 43 Md.App. 84, 402 A.2d 1329 (1979), stated:

"It appears to the Court that the New Jersey Court at Complainant's request by Order dated June 4, 1975, circumscribed the obligation of Respondent, Kenneth Autry, to pay support reserving only the New Jersey Welfare Support arrearages. By doing so it left no obligation *imposed or imposable* within the meaning of Section 7 of Article 89C.

. . .

"It is significant that Petitioners here provided support for the child from May 1, 1978 to the present, such support beginning after the New Jersey Court had terminated Autry's obligation to pay any support.

"*Assuming that the New Jersey Court's Order of June 4, 1975* means what it says and *does in fact terminate Autry's duty to support* (either imposed or imposable as referred to in Section 7 of Article 89C) then there is no right in Virginia to collect from Autry that which Autry has no lawful obligation to pay." (Emphasis added.)

The Virginia Department of Welfare appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by that Court. We shall vacate the judgment of the trial court.

The relevant statutory provisions of Art. 89C are § 2 (g), § 4, and § 7.

Section 2 (g) provides:

" *'Duty of support'* includes any duty of support *imposed or imposable by law, or by any court order, decree or judgment,* whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance or otherwise." (Emphasis added.)

Section 4 provides:

"*Duties of support arising under the law of this State,* whether applicable under § 7, *bind the obligor, present in this State,* regardless of the presence or residence of the obligee." (Emphasis added.)

Section 7 provides:

"*Duties of support applicable under this article are those imposed or imposable under the laws of any state where the obligor was present* during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown." (Emphasis added.)

The general purposes of Art. 89C are to improve and

extend the enforcement of duties of support. Art. 89C, § 1.[2] More particularly, one of the purposes of Art. 89C is to provide liberal enforcement in Maryland of the claims of nonresident parents and children entitled to support. *Zouck v. Zouck,* 204 Md. 285, 300-01, 104 A.2d 573, 580 (1954). Still another purpose is to provide liberal enforcement in Maryland of the claims of out-of-state welfare departments which have made support payments to nonresident parents and children entitled to support. Art. 89C, § 8.[3] The Act has broad remedial purposes and, therefore, should be liberally construed. *E.g., Lambrou v. Berna,* 154 Me. 352, 356, 148 A.2d 697, 700 (1959); *State of Illinois ex rel. Shannon v. Sterling,* 248 Minn. 266, 274, 80 N.W.2d 13, 19 (1956); *Davidson v. Davidson,* 66 Wash.2d 780, 785, 405 P.2d 261, 265 (1965); *see, e.g., Keesling v. State,* 288 Md. 579, 589, 420

---

**2.** Art. 89C, § 1 provides:

"The purposes of this article are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto."

**3.** Art. 89C, § 8 provides:

"*Whenever the State or a political subdivision thereof furnishes support* to an obligee *it has the* same *right to invoke the provisions hereof* as the obligee to whom the support was furnished for the purpose of securing reimbursement of expenditures so made and of obtaining continuing support." (Emphasis added.)

Article 89C is patterned upon the URESA prepared by the Council of State Governments and the National Conference of Commissioners on Uniform State Laws. The Commissioners' Prefatory Note to the 1950 Act states:

"Of course the destitute family (the obligee) may exercise rights under the act. But the state or political subdivision thereof may also seek reimbursement for support already furnished to the family (Section 8). *This section* will allow the states to recapture a good part of the $200,000,000 a year now spent in supporting deserted families and *is perhaps the most important provision of the act.*" URESA, 9A U.L.A. 752 (1979) (emphasis added).

The Commissioners' Prefatory Note to the 1968 Revised Act states:

"Over the years many thousands of cases have been brought under the Act and many millions of dollars have been recovered. As a result the duty of family support is placed where it belongs, on the shoulders of the one who, under state law, owes the duty. *The state is thus relieved from keeping on its relief rolls those, often in destitute circumstances, to whom the duty is owed.*" URESA, 9A U.L.A. 644 (1979) (emphasis added).

A.2d 261, 266 (1980); *James v. Prince George's County,* 288 Md. 315, 335, 418 A.2d 1173, 1184 (1980); *Smith v. Higinbothom,* 187 Md. 115, 130, 48 A.2d 754, 762 (1946); *see also* 3 Sutherland, Statutory Construction § 60.01-02 (4th ed. C. Sands 1974).

Article 89C embodies a statutory scheme by which nonresident parents and children entitled to support, as well as welfare departments, can enforce duties of support across state lines. URESA, 9A U.L.A. 748 (1979). A URESA proceeding is commenced when a person to whom a duty of support is owed files a petition, Art. 89C, § 9,[4] in a court of the initiating state, the state in which that person resides. Art. 89C, § 2 (c).[5] After determining that a duty of support exists, the court in the initiating state forwards the petition to a court of the responding state, the state where the parent allegedly owing a duty of support resides. Art. 89C, § 14(a).[6] The court of the responding state, Art. 89C, § 2(d),[7] must obtain jurisdiction over the parent, Art. 89C, § 18(a)(1),[8]

---

**4.** Art. 89C, § 9 provides:

"All duties of support, including arrearages, are enforceable by petition irrespective of relationship between the obligor and obligee."

**5.** Art. 89C, § 2 (c) provides:

" 'Initiating state' means any state in which a proceeding pursuant to this or a substantially similar reciprocal law is commenced."

**6.** Art. 89C, § 14 (a) provides in pertinent part:

"If the court of this State acting as an initiating state finds that the petition sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property, the court shall so certify and shall cause three copies of (1) the petition, (2) the certificate and (3) this article to be transmitted to the court of the responding state."

**7.** Art. 89C, § 2 (d) provides:

" 'Responding state' means any state in which a proceeding pursuant to the proceeding in the initiating state is or may be commenced."

**8.** Art. 89C, § 18 (a) (1) provides:

"After the court of this State acting as a responding state has received from the court of the initiating state the aforesaid copies

hold a hearing, Art. 89C, § 18 (b),[9] and determine whether a duty of support exists, and if so, the extent of that duty. Art. 89C, § 23.[10] In determining whether and to what extent a duty of support is imposed or imposable, ordinarily it is the law of the responding state, and not the law of the initiating state, which governs. Art. 89C, §§ 2, 4, & 7. *E.g., Engelson v. Mallea,* 180 N.W.2d 127, 131 (Iowa 1970); *Rosenberg v. Rosenberg,* 152 Me. 161, 163, 125 A.2d 863, 864 (1956); *Mahan v. Read,* 240 N.C. 641, 648, 83 S.E.2d 706, 712 (1954); *Childers v. Childers,* 19 N.C.App. 220, 224-25, 198 S.E.2d 485, 488 (1973); *see McCabe v. McCabe,* 210 Md. 308, 314-15, 123 A.2d 447, 450 (1956). If the court of the responding state finds a duty of support, it may order the parent to furnish support or reimbursement, and may take appropriate steps to enforce compliance with that order. Art. 89C, § 23.[11] The remedies provided by the Act are in addition to any other remedies that may exist. Art. 89C, § 3.[12] *See Barrell v. Barrell,* 288 Md. 19, 22, 415 A.2d 579, 580-81 (1980).

Here the record shows that at the time the petition was filed, the child resided in Virginia and the father resided in Maryland. The petition was filed in a court in Virginia, the initiating state, and was forwarded to a court in Maryland, the responding state. Thus, whether and to what extent a duty of support is imposed or imposable is governed by Maryland law. Art. 89C, §§ 2, 4, & 7.

---

the clerk of the court shall docket the case and give notice of his action to the obligee's representative."

**9.** Art. 89C, § 18 (b) provides in pertinent part:

"It shall be the duty of the obligee's representative ... to ... request ... a hearing."

**10.** Art. 89C, § 23 provides:

"If the court of the responding state finds a duty of support it may order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to such order."

**11.** *See* n.10 above.
**12.** Art. 89C, § 3 provides:

"The remedies herein provided are in addition to and not in substitution for any other remedies."

At common law, a father of an illegitimate child owed no duty of support. *Fiege v. Boehm,* 210 Md. 352, 358, 123 A.2d 316, 320 (1956); *see* 10 Am.Jur.2d *Bastards* § 68 at 895 (1963). As long ago as 1781, such a duty was imposed in Maryland by a statute that provided criminal penalties for nonsupport of an illegitimate child.[13] Thereafter, this Court, applying that Act and its successors, has consistently enforced a father's duty to support an illegitimate child. *Dorsey v. English,* 283 Md. 522, 529-30, 390 A.2d 1133, 1138 (1978); *State v. Hardesty,* 132 Md. 172, 176, 103 A. 461, 462 (1918); *Oldham v. State,* 5 Gill 90, 93 (1847).

In 1962, as part of a broad legislative plan to restructure the criminal bastardy laws, Art. III, § 38 of the Maryland Constitution was amended.[14] The amendment expressly provides that a father's obligation to support an illegitimate child is a duty enforceable by attachment and imprisonment. *Brown v. Brown,* 287 Md. 273, 282, 412 A.2d 396, 401 (1980).

The Paternity Act, Md. Code (1957, 1981 Repl.Vol.), Art. 16, §§ 66A to 66P, was enacted by the 1963 Maryland Laws, ch. 722. That Act repealed Md. Code (1957), Art. 12 "Bastardy and Fornication," the then most recent successor to the 1781 Maryland Laws, ch. 13, § 1, and transformed the character of the proceeding in which a father's paternity and

---

**13.** 1781 Md. Laws, ch. 13, § 1 provided in pertinent part:

"[A]ny justice of the peace ... informed of any female person having an illegitimate child ... shall call on her for security to indemnify the county from any charge that may accrue by means of such child, and, upon neglect or refusal, to commit her ... to be ... safely kept until she shall give such security; but in case she shall on oath discover the father, then the said justice is hereby required to discharge her ... and directed to call such father ... before him, and shall cause him to give security ... to indemnify the county from all charges that may arise for the maintenance of such child. ..."

**14.** Art. III, § 38, as amended by 1962 Md. Laws, ch. 121 and ratified 6 November 1962, provides:

"No person shall be imprisoned for debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a wife or dependent children, or for the *support of an illegitimate child or children,* or for alimony, shall not constitute a debt within the meaning of this section." (Emphasis added.)

his duty to support an illegitimate child were determined from criminal in nature, *Oldham,* 5 Gill at 93, to civil in nature. *Thompson v. Thompson,* 285 Md. 488, 490-91, 404 A.2d 269, 271 (1979).

The primary purposes of the Paternity Act are to impose the basic obligations and responsibilities of parenthood upon both parents of illegitimate children, and to insure that illegitimate children enjoy the same right of support as legitimate children. *Dorsey,* 283 Md. at 529, 390 A.2d at 1138; *Corley v. Moore,* 236 Md. 241, 243, 203 A.2d 697, 698 (1964); Art. 16, § 66A. An additional purpose is to shift the burden of support from the taxpayers to the parents of the illegitimate child. *Mayor of Rockville v. Randolph,* 267 Md. 56, 61, 296 A.2d 574, 576 (1972); *Shelley v. Smith,* 249 Md. 619, 630, 241 A.2d 682, 688 (1968). The Paternity Act effectuates these purposes by assigning to parents of illegitimate children the same support responsibilities as are assigned to parents of legitimate children by Md. Code (1957, 1978 Repl.Vol.), Art. 72A, § 1.[15]

There can be no question that under Maryland law a duty of support is imposed upon the father of an illegitimate child. The question here concerns the circumstances under which such a duty of support is "imposable" by a Maryland court acting as a responding state court in a URESA proceeding.

Ordinarily, as conceded by the father here, a duty of support is imposable by a responding state court in a URESA proceeding even though no previous order of support exists. *E.g., Clarkston v. Bridge,* 273 Or. 68, 72, 539 P.2d 1094, 1096 (1975); *Brown v. Thomas,* 221 Tenn. 319, 323, 426 S.W.2d 496, 498 (1968); *Yetter v. Commeau,* 84 Wash.2d 155, 162, 524 P.2d 901, 905 (1974); *see also Banks v. McMorris,* 47 Cal.App.3d 723, 727, 121 Cal.Rptr. 185, 188 (1975); *Harmon v. Harmon,* 160 Cal.App.2d 47, 53, 324 P.2d 901, 905 (1958): *Johnson v. Ross,* Ind.App., 405 N.E.2d 569, 571

---

**15.** Art. 72A, § 1 provides in pertinent part:

"The father and mother are the joint natural guardians of their child under eighteen years of age and are jointly and severally charged with its support, care, nurture, welfare and education."

(1980). As stated by W. Brockelbank and F. Infausto in their book, *Interstate Enforcement of Family Support* 39 (2d ed. 1971):

"[The duty of support], of course, may grow out of the order of support or a judgment or decree but is equally a duty if it never has received judicial attention and now is the basis of litigation for the first time under the Act."

Illustrative of this general principle is the case of *Johnson v. Ross,* Ind.App., 405 N.E.2d 569 (1980). There, a husband and wife were divorced but no support was ordered because the husband alleged that no children were born of the marriage. Subsequently, the wife instituted a URESA proceeding for support of her child. The husband answered, stating that he was not the child's father and contending that there had never been an adjudication imposing a duty on his part to support the child. In concluding that the responding court had the authority to impose a duty of support, the Court of Appeals of Indiana stated:

"We note at the outset Johnson is mistaken in his assertion that an action under the Act requires a pre-existing judicial determination of support duty. He correctly concludes the Act does not 'create' obligations of support. It does, however, enforce such responsibilities, and broadly defines 'duty of support' to include 'any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise.' IC 31-2-1-2 (f). It is evident no previous court judgment is required to create an obligation which is *'imposable'* by law. *Banton v. Mathers,* (1974) 159 Ind.App. 634, 309 N.E.2d 167 (the Act's remedy need not be predicated upon a divorce decree); *Olson v. Olson,* (Mo. App. 1976) 534 S.W.2d 526; *Banks v. McMorris,* (1975) 47 Cal.App.3d 723, 121 Cal.Rptr.

185. *Olson* correctly observed '[a] duty of support "imposable by law" is one arising out of a relationship — a duty of support *to be adjudicated'* (emphasis in original). 534 S.W.2d 530." *Johnson,* Ind.App., 405 N.E.2d at 571.

Under this general principle, if the New Jersey Court had not imposed a previous order of support in the instant case, a duty of support would have been imposable by the Maryland court acting as a responding state court.

Here, however, the New Jersey Court had imposed a duty of support upon the father in an order that it subsequently vacated. In our view, the effect of the vacating order was to nullify the previous order imposing a duty of support and, therefore, to leave the case in the same posture as if the previous order of support had never been imposed. If the general principle were to be applied here, the duty of support existing under Maryland law would be imposable by a Maryland court acting as a responding state court in a URESA proceeding. Such a result would be consonant with the broad remedial purposes of the Act.

Moreover, even if we did not view the New Jersey Court's vacating order as a nullifying order, we would reach the same conclusion. That vacating order can be modified by the New Jersey Court when required in the best interests of the child by a change in circumstances N.J. Stat. Ann. § 9:16-2 to 4 (1976); N.J. Stat. Ann. § 2A:34-23 (1976); *e.g. Kopak v. Polzer,* 4 N.J. 327, 332-33, 72 A.2d 869, 871 (1950); *C.M. v. C.C.,* 170 N.J. Super. 586, 591, 407 A.2d 849, 852 (1979); *see also Bergen County Welfare Bd. v. Cueman,* 164 N.J. Super. 401, 404, 396 A.2d 620, 622 (1978). Thus, we do not agree with the trial court's assumption that the New Jersey Court's vacating order established that the father's duty to support the child was permanently terminated. Indeed, that vacating order did nothing more than determine that at a given time, under given circumstances, under New Jersey law, the father was not required to pay any amount of money for child support. Thus, in our view, the vacating order, if not viewed as a nullifying order, is no different from any other

order affecting child support issued by a court of a jurisdiction other than Maryland.

Ordinarily, a responding state court in a URESA proceeding has the authority to consider child support matters and to enter whatever support orders are proper, notwithstanding any action taken in a prior judicial proceeding. Thus, a responding state court has the authority to issue an independent order fixing an amount of support different from that previously ordered by a court. *E.g., Elkind v. Byck,* 67 Cal.Rptr. 404, 407, 439 P.2d 316, 319 (1968); *Thompson v. Thompson,* 93 So.2d 90, 93 (Fla. 1957); *Moore v. Moore,* 252 Iowa 404, 411, 107 N.W.2d 97, 100-01 (1961); *Balestrine v. Jordan,* S.C., 272 S.E.2d 438, 439 (1980); *Davidson,* 66 Wash.2d at 786, 405 P.2d at 264-65; *see also Rohrer v. Kane,* Colo.App., 609 P.2d 1121, 1122 (1980); *Abb v. Crossfield,* 23 Md. App. 232, 237, 326 A.2d 234, 238 (1974); *Olson v. Olson,* 534 S.W.2d 526, 530 (Mo.App. 1976); *Jaramillo v. Jaramillo,* 27 Wash.App. 391, 395, 618 P.2d 528, 530 (1980). *But see Bushway v. Riendeau,* 137 Vt. 455, 463-64, 407 A.2d 178, 182 (1979).

Illustrative of this general principle is *Rohrer v. Kane,* Colo.App.    , 609 P.2d 1121 (1980). There, a husband and wife were divorced by a California court that ordered the husband to pay support for two children. Subsequently, the wife instituted a URESA proceeding for an increase in the amount of child support previously awarded by the California court. In concluding that the responding Colorado court had the authority to increase the amount of support, the court recognized that a proceeding under URESA is an independent action and stated:

> "We disagree with respondent's assertion that URESA cannot be used if the effect is to increase the amount of support over that ordered by the court originally dissolving the marriage. The purpose of URESA is to provide for the enforcement of duties of support. To achieve this end, the act provides that any remedies under the act are in

addition to, and are not in substitution for any other remedies. In light of the purposes of the act and the legislative grant of broad powers to fashion the necessary remedies, we conclude that URESA must be liberally construed, and thus, that Colorado courts have authority to order child support under the provisions of this act commensurate with the current needs of the children and the abilities of the respondent, without being limited by previous support orders." *Rohrer,* Colo.App., 609 P.2d at 1122 (citations omitted).

Under this general principle, if the New Jersey Court had entered an order of support in the instant case, the Maryland court would, nonetheless, have the authority to consider the matter of child support and to enter an order in an amount different from that previously entered by the New Jersey Court.

Here, however, the New Jersey Court had entered an order of support which it subsequently vacated. That vacating order, if not viewed as a nullifying order, is no different from any other order affecting child support issued by a court of a jurisdiction other than Maryland. If the general principle were to be applied here, the Maryland court would have the authority to enter an order, if warranted by the child's needs, requiring the father to pay child support. Such an order would, if issued, do nothing more, in effect, than increase the amount of child support previously ordered by the New Jersey Court's vacating order. Again, such a result would be consonant with the broad remedial purposes of the Act.

Courts in some jurisdictions, under circumstances other than those here, have viewed an order establishing that a father need not make previously ordered child support payments as an order "terminating," "excusing," "suspending," "relieving," or "discharging" child support obligations. Such courts have determined, on the basis of varying rationales, that URESA does not authorize a responding state court to enter a support order after a prior

judicial order explicitly or implicitly establishing that a father need not make previously ordered child support payments. *E.g., State ex. rel. Arvayo v. Guerrero,* 21 Ariz.App. 173, 176, 517 P.2d 526, 529 (1974) (child support obligation "terminated"); *Moffat v. Moffat,* 27 Cal.3d 645, 659-60, 165 Cal.Rptr. 877, 885-86, 612 P.2d 967, 975-76 (1980) (child support obligation "excused"); *Ray v. Pentlicki,* 375 So.2d 875, 878 (Fla.App. 1979) (child support obligation "suspended"); *Cochran v. Cochran,* 263 So.2d 292, 293 (Fla.App. 1972) (child support obligation "relieved"); *Chance,* 43 Md.App. at 87, 402 A.2d at 1331) (child support obligation "implicitly discharged").

In virtually all of these cases, the order establishing that a father need not make previously ordered child support payments was entered because the mother had violated previously existing court orders awarding visitation rights to the father. In these cases, the withholding of child support was not premised upon the child's needs, but rather, was utilized for the purpose of compelling the mother to comply with the court's previous visitation orders. Moreover, courts in still other jurisdictions, under circumstances in which a mother had violated previously existing custody orders, have reached the opposite conclusion and have held that URESA authorizes a responding state court to enter whatever support orders are proper, notwithstanding a previous judicial order "terminating," "relieving," or "abating" child support obligations. *E.g., Gruber v. Wallner,* 198 Colo. 235, 238-39, 598 P.2d 135, 137 (1979) (child support obligation "relieved"); *Kansas State Dept. of Social & Rehabilitation Servs. v. Henderson,* Colo.App., 620 P.2d 60, 61 (1980) (child support obligation "abated"); *Cobbe v. Cobbe,* 163 A.2d 333, 335-36 (D.C. 1960) (child support obligation "abated"); *State of Maine, Dept. of Human Servs. ex rel. Horton v. Horton,* 99 Mich.App. 90, 92, 297 N.W.2d 622, 623 (1980) (child support obligation "terminated"); *cf. Clark v. Clark,* 246 Cal.App.2d 619, 623, 54 Cal.Rptr. 875, 877 (1966) (custody awarded to father — no explicit order "terminating" father's obligation to pay child support to mother). *But cf.*

*Hethcox v. Hethcox,* 146 Ga.App. 430, 432-33, 246 S.E.2d 444, 446 (1978); *State of New Jersey v. Morales,* 35 Ohio App.2d 56, 61-3, 299 N.E.2d 920, 924 (1973) (custody awarded to father — no explicit order "terminating" father's obligation to pay child support to mother).

All of these cases are inapposite. In the instant case, the mother is not a recalcitrant violator of a previous visitation or custody order. We are, therefore, not concerned with the propriety of withholding support payments in order to compel a recalcitrant mother's compliance.[16] Rather, we are here concerned solely with the child's needs. Under the circumstances here, we shall apply the general principle that a responding state court in a URESA proceeding has the authority to consider child support matters and to enter whatever orders are proper, not only when a previous order of child support does not exist, but also when an order affecting child support has been entered in a prior judicial proceeding.

Here, on 4 June 1975, the New Jersey Court, at the request of the mother, vacated a previous order requiring the father to pay child support. Subsequently, there has been a substantial change in circumstances. Since 1 May 1978, the child has been in the physical custody of her grandmother, has resided in Virginia with her grandmother, and has received public assistance benefits from that State.

This URESA proceeding was initiated by the Virginia Department of Welfare. It is an independent action. Its purpose is to provide for the enforcement of duties of support. The remedies available in this proceeding are in addition to and not in substitution for any other remedies. In light of URESA's purposes, the Act must be liberally construed to authorize the Maryland court to order child support com-

---

16. We note that in Maryland the fact that a custodial parent violates a previously existing court order awarding visitation rights to the noncustodial parent does not terminate the noncustodial parent's obligation of support. Stancill v. Stancill, 286 Md. 530, 538, 408 A.2d 1030, 1035 (1979); Seltzer v. Seltzer, 251 Md. 44, 45, 246 A.2d 264, 265 (1968).

mensurate with the child's current needs without being limited by previous court orders.

In this URESA proceeding, in which the Maryland court is acting as the responding state court, the law of Maryland governs so that whether and to what extent a duty of support is imposed or imposable is dependent upon Maryland law. Under Maryland law, a duty of support is constitutionally and statutorily imposed upon the father of an illegitimate child. Whether the New Jersey Court's vacating order be viewed as a nullifying order or as an order affecting support, the Maryland court has the authority to enter an order, if warranted by the child's needs, requiring the father to pay child support. This result is consonant with the broad remedial purposes of the statutory scheme embodied in the Act.

Under the present circumstances, the trial court erred in dismissing the URESA petition.[17] Accordingly, we shall vacate the judgment of the trial court and shall remand the case to that court for further proceedings.

> *Judgment of the Circuit Court for Anne Arundel County vacated.*
> *Case remanded to that Court for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*

---

**17.** The trial court's reliance on Chance v. LaPausky, 43 Md.App. 84, 402 A.2d 1329 (1979), was misplaced. There, a husband and wife were divorced. The decree stated that the mother was to have custody of the child and "be chargeable with her support and maintenance." The Court of Special Appeals, interpreting that decree as implicitly discharging the father from a statutorily imposable duty to support the child, and, therefore, as an order terminating his support obligation, held that URESA did not authorize the entry of a support order. No petition seeking a writ of certiorari was filed.

This Court has not yet considered the issue decided by the Court of Special Appeals in *Chance*. Because the question whether an order charging a custodial parent with support and maintenance of a child implicitly and permanently terminates the noncustodial parent's duty of support is not the question presented in this case, we express no opinion as to whether we would reach the same conclusion reached by the Court of Special Appeals in *Chance*.